617 So.2d 1358 (1993)
Mervin JOHNSON, Plaintiff-Appellant,
v.
PETRON, INCORPORATED, Defendant-Appellee.
No. 92-898.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
Joseph Texada Dalrymple, Alexandria, for Mervin Johnson.
Michael Glenn Hodgkins, Lake Charles, for Petron Inc.
Before DOUCET, YELVERTON and COOKS, JJ.
YELVERTON, Judge.
Mervin Johnson, a truck driver, had a heart attack on the job and is totally and permanently disabled. He filed a claim for worker's compensation benefits and medical expenses. The administrative law judge denied the claim. Johnson appealed. We reverse. We find that the plaintiff had an accident which is compensable under the Worker's Compensation Law, and we remand to the trial court for a determination of the amount of benefits payable.
In 1989 the legislature amended La.R.S. 23:1021 of the Worker's Compensation law, adding Subparagraph (7)(e), as follows:

*1359 (e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
This amendment was in effect when Johnson had his heart attack on February 8, 1991. It changes the law in three ways. First, it changes the standard of proof from a preponderance of the evidence to clear and convincing evidence. Second, it changes the standard for comparing the physical work stress or exertion experienced by the worker; the exertion has to be extraordinary and unusual in comparison to that experienced by the average employee in that occupation. Third, it adds a requirement that the physical work stress or exertion, and not some other source of stress or preexisting condition, be the predominant and major cause of the heart related or perivascular injury, illness, or death.
This circuit recently applied the amendment in a case involving a perivascular accident. Charles v. Travelers Insurance Company, 615 So.2d 20 (La.App. 3d Cir. 1993). The denial of benefits was affirmed because by the claimant's own admission the work being done on the date of the accident was no different from that of other employees and the work stress was not unusual nor the primary cause of the stroke.

FACTS
The facts in this case are relatively simple and undisputed. There were but five witnesses: the plaintiff, three of his coworkers, and his cardiologist. It was stipulated that the heart attack occurred during the course and scope of Johnson's employment. It was also stipulated that the heart attack rendered him totally and permanently disabled, and that no worker's compensation benefits, medical or otherwise, have been paid.
Johnson drove a tanker truck and delivered diesel fuel and gasoline to various dealers in small towns and communities in Southwest Louisiana. His routine route was to drive his tanker south from his home in Oakdale to a refinery near Lake Charles, a distance of about 65 miles, load his tanks with gas or diesel or both, then make deliveries to Petron's customers on his way back to Oakdale.
At about midnight on February 8, 1991, he left home in his tanker and drove south on Highway 165. In route he traveled through several small towns, stopping at and crossing a number of railroad tracks. Except for a few miles of interstate near Lake Charles, all of his route was rural, with traffic lights in small towns and railroad tracks. These necessitated numerous starts and stops, and his tractor had a ten-speed, manual transmission.
He loaded his tanks that night at the refinery, then drove north along curvaceous country highways and across several railroad tracks through DeQuincy to Merryville. His first filling station drop off in Merryville had a new asphalt parking area, which he was forbidden to cross, and so he had to link up hoses from his tanks to reach the drop off tank.
The transfer of gas from his tanker to the drop off tank through the hose was a strenuous operation. Johnson's tanker truck, unlike the vehicles of his coworkers, was equipped with a screw valve to open and close the tank. The other vehicles were equipped with levers. The operation of the screw valve required about 15 to 20 hand turns to open it and the same turns to close it. While the screw valve was being opened and closed, packing had to be maintained tightly against the valve with the *1360 use of a wrench, to comply with environmental rules and avoid spillage. To avoid spillage at the other end, the underground tank being filled had to be checked with a dipstick periodically, that night three times during the filling operation. This meant that he had to turn the screw valve 90 to 120 times. Johnson described the effort involving each turn of the valve as about the effort it took to break a lug nut loose when changing a tire. As he was completing this operation at his first stop in Merryville, he began to experience pain in his chest and arms. He went to a cafe, from which an ambulance was called. He was found to have suffered a heart attack.
After recuperating from this heart attack, he underwent coronary artery bypass surgery. The bypass did not help. He now suffers from uncorrectable myocardial ischemia.
Dr. Romel Wrenn, a cardiologist who was Johnson's doctor at all times, testified by deposition. He was made aware of the mechanics of a screw valve operation. He gave the opinion that the cause of Johnson's heart attack, or what brought on the heart attack on the 8th of February, was the significant exertion that he was undergoing at the time of his employment. He added that if Johnson had been off work and playing basketball and had a heart attack, he would have felt that the exertion of basketball caused it.
Although Johnson had had no prior symptoms, tests confirmed that he had underlying coronary artery disease. Two of his arteries were 90% blocked and two were 60% blocked. The blockage of these arteries did not cause his heart attack. It was the blockage of a fifth artery, the right coronary, which became 100% occluded, that cause his heart attack. According to Dr. Wrenn, medical science cannot say to what extent, if any, this artery was blocked before the heart attack. Dr. Wrenn explained that the reason he could not say how much, if any, blockage there had been in the right coronary artery before it became 100% occluded, was because he had seen patients with 50% occlusion in one artery and 90% in another who later suffered 100% occlusion in the artery with less blockage.
It is clear from Dr. Wrenn's testimony that Johnson's heart attack was not the result of a gradual deterioration or progressive degeneration of his arteries. As the doctor put it:
It's my feeling that he indeed probably certainly had coronary heart disease present, but that his physical activity on the 8th of February exacerbated this disease and caused him to go a step further, to suffer a myocardial infarction, a heart attack.
He answered a question indicating that he did not think that Johnson's preexisting vascular disease just suddenly and contemporaneously with this physical effort progressed in its own natural course to the point of causing him a heart attack.
Three Petron drivers who were coworkers of Johnson testified. Their routes were easier, mainly interstate travel, which avoided curvy rural roads, railroad tracks, and small towns. One co-worker with an arthritic knee explained that he liked the interstate better because he didn't have to get in and out of his truck so much. The main distinction between Johnson's exertion, however, and those of his three co-employees, as well as other tanker drivers in the fill-up line with him at the refinery, was that his truck alone was equipped with a screw valve. All of the others had levers for engaging and disengaging the flow. The testimony was uncontradicted that the opening and closing of a valve with a lever, one simple operation, was much easier than the use of the screw valve, which necessitated many physically difficult motions.

TRIAL JUDGE'S FINDINGS
The trial judge gave two reasons based on factual findings for denying the claim. First, he found that claimant's work was "perhaps more difficult" than his fellow truck drivers. However, the trial judge believed that claimant's work was not "extraordinarily more difficult."
The second reason for denying the claim was stated as follows:

*1361 The medical evidence further shows that claimant had significant coronary heart disease. Therefore, while it may be true, as Dr. Ramel[sic] C. Wrenn states in his deposition, p. 10, that the claimant's physical activity exacerbated the disease and caused it to go a step further to cause the heart attack, it is also likely that any other type of normal physical activity, such as work around the house or yard work, could have just as well precipitated the heart attack.
The trial court stated its opinion as to the legislative purpose of La.R.S. 23:1021(7)(e)(i), the requirement of proof that the physical work stress be extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. The trial court believed that the legislative purpose behind this requirement was to exclude from coverage an employee who, because of medical reasons, was likely to have a heart attack, but who just happened to have a heart attack while performing his job. In the trial court's opinion, in such a case the physical aspects of the job would not be a unique reason or cause for the heart attack. The trial court believed that the employee could just as well have had a heart attack while mowing the lawn at home.

OPINION
At the time these amendments were enacted, the case of Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La. 1982) was a landmark on this subject. According to Guidry, the causal link between the work and the heart attack was established by proof that the employee's work activities, acting upon his pre-existing heart disease, entailed greater exertion, stress or strain than everyday activities of the average person who did not work. The comparison was between the employee's work activities and the everyday activities of the average non-worker. If the physical exertion, stress, or strain on the job, preceding the attack, was no more than the worker would have likely experienced in a non-work situation, the attack might be the result of the natural progression of the pre-existing disease rather than the result of the employment activity. Guidry, at 633. The Guidry test of a causal relationship was an objective one: the exertion, stress or strain had to be of a greater degree than that generated in everyday non-employment life. Id.
In a case which arose before the amendments were enacted but was decided after they were enacted, Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989), on rehearing, the court held that, while Guidry reached a correct result, its objective test departed from the jurisprudence. The jurisprudence before Guidry used a subjective test, whether there was a causal relationship between the employee's work-related activities measured against the standard of the employee's own nonemployment life. This subjective test was reinstated and applied in Carruthers, and compensation was awarded.
The test under the new law is an objective one. However, the comparison is not between the physical work stress required of the job and the physical work stress encountered in the non-employment activities of the average person, nor is it a comparison with the claimant's own unemployment life activities. The new test compares the exertion of the worker to that experienced by the average employee in that occupation.
In the present case the only relevant comparison is the work of the average employee in that occupation, and not what the plaintiff did at home in his off-work time, whether it was house or yard work, mowing the lawn, or playing basketball.
We also believe that the trial judge made too much of the significance of the word "extraordinary." The language of the new law is "extraordinary and unusual" in comparison to the stress or exertion experienced by the average employee in that occupation. "Ordinary" and "usual" are synonyms, and "extraordinary" and "unusual" also mean about the same thing. Webster's defines "extraordinary" as "going beyond what is usual, regular or customary." The claimant had to prove merely *1362 that his physical work stress went beyond what was usual, regular or customary in relation to the average employee in that occupation. The amendment contains no minimum standard by which one had to exceed the other.
We agree with the trial judge that the legislative purpose of the change in the law was to exclude from coverage an employee who just happened to have a heart attack while performing his job. In this case, however, it is clear from the only medical testimony in the record, that Johnson did not just happen to have a heart attack while performing his job. Dr. Wrenn made it clear that the cause of his heart attack was the significant exertion which he was undergoing that morning. As a theoretical proposition, the doctor said that he could just as well have attributed the heart attack to playing basketball at home, had the plaintiff been playing basketball at home when he had it. The fact is, however, the plaintiff had his heart attack on the job while he was doing extraordinary and unusual exertion that his co-workers did not have to do. Since this exertion was the cause of the heart attack, it follows that had he not been engaged in this physical work stress, he would not have had a heart attack at that time. He was working and was able to work before the accident. Because of the significant death of heart muscle, he was rendered totally and permanently disabled as a result of the accident. It can hardly be said, in the view of Dr. Wrenn's testimony, that the physical work stress was not the predominant and major cause of his heart attack and resulting total disability.
Any other interpretation of the amendment on the facts of this case would require a holding that no heart attack on the job will ever be compensable. The facts of this case are rather strong for the plaintiff. If the plaintiff in the present case cannot win, when the only doctor testifying stated that the heart attack was caused by the work and not by the underlying disease, then no heart attack at work will ever be compensable. While on the facts of some heart cases the application of the amendment will restrict recovery, there is no indication that the legislature intended to eliminate altogether heart related or perivascular injuries as compensable accidents arising out of and in the course of employment.
Finally, we believe that the simplicity of this case and the uncontradicted testimony satisfies the rigid test of clear and convincing evidence.
Plaintiff was both a salaried and commissioned employee, and the payroll data is inadequate for us to determine the appropriate compensation rate. For this reason we will remand the case to the trial court for the fixing of the rate and the entry of a formal judgment.
For the reasons assigned, the judgment of the trial court is reversed. Plaintiff is awarded worker's compensation benefits and medical expenses, and all costs, in accordance with law. The case is remanded to the trial court for the fixing of the compensation rate and the entry of a formal judgment.
REVERSED AND REMANDED.