649 So.2d 449 (1994)
Kelly DEBONA, Plaintiff-Appellee,
v.
Alexandria PAWN, Defendant-Appellant.
No. 94-430.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Writ Denied January 27, 1995.
*450 Joseph Texada Dalrymple, Alexandria, for Kelly Debona.
Russell L. Potter, Alexandria, for Alexandria Pawn.
Before THIBODEAUX, COOKS and SAUNDERS, JJ.
THIBODEAUX, Judge.
The defendant, Alexandria Pawn, appeals a workers' compensation hearing officer's judgment rendered in favor of the plaintiff, Kelly Debona, seeking a reversal of the hearing officer's judgment finding that the heart attack suffered by Debona on June 15, 1992, was a compensable accident and that Debona was rendered totally and permanently disabled as a result of the heart attack. For the following reasons, we find that Debona had a heart attack while in the course and scope of his employment that is compensable under the Worker's Compensation Act, and is totally and permanently disabled. Therefore, we affirm the judgment of the hearing officer.

I.

ISSUES PRESENTED
On appeal, Alexandria Pawn presents three issues for review:
(1) whether the Hearing Officer erred in finding that at the time of his heart attack, Debona was engaged in physical work stress that was "extraordinary and unusual" in comparison to the stress or exertion experienced by the average pawn shop employee;
(2) whether Debona's physical work stress or exertion was the predominant and major cause of Debona's heart related injury and thereby compensable pursuant to La.R.S. 23:1021(7)(e); and,
*451 (3) whether the hearing officer erred in finding that Debona met his burden of proving, by clear and convincing evidence, that he is totally and permanently disabled as a result of his on-the-job heart attack.

II.

THE STATUTE
La.R.S. 23:1021(7)(e) provides:
Heart-related or perivascular injuries.
A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.

III.

THE FACTS
On June 15, 1992, Debona, an employee of Alexandria Pawn, felt fine when he arrived for work at the pawn shop to assist customers. Debona's duties at the pawn shop was to write up pawn tickets, wait on customers, pull merchandise off of pawn and sell the merchandise, as well as sweeping the sidewalk. After the store started using computers, Debona's job duties changed somewhat. He became responsible mainly for retrieving merchandise for customers and putting away pawned merchandise. Debona's duties also included lifting various types of merchandise such as 19" and 13" televisions, tools and toolboxes, as well as portable stereo systems, VCRs, typewriters and other small appliances. Big items like console television sets were usually on rollers and did not require any lifting. Items that were not on rollers but that were too heavy for one person to lift, were lifted by Debona and his co-worker, Terry Quesenberry.
Between 2:00 p.m. and 3:00 p.m., on June 15, 1992, George Lyles, the owner of Alexandria Pawn, asked Debona to go to the supermarket down the street and purchase several cases of cokes. Since Debona's brother, Frank, was at the store visiting in his truck, and since Debona did not have a truck, Lyles asked Frank to drive Debona to the store. Frank agreed. Debona testified that prior to Lyles's request that he purchase the cokes, with the exception of purchasing small supplies like scotch tape and writing tablets, he had never gone to get anything for Lyles. He further testified that purchasing and delivering cokes was not part of his job and that Lyles always did that himself.
Debona and his brother went to the grocery store and purchased approximately twelve (12) cases of cokes. Each case contained twelve (12) cans of coke[1] and each can weighed twelve (12) ounces. The cokes were put into a shopping buggy and loaded onto the truck one or two cases at a time. Debona and Frank drove back to the shop, but Frank had to park his truck in the parking lot of a nearby business because the pawn shop's lot was full. The parties stipulated that on June 15, 1992, the temperature outside was 94 degrees. The humidity was high that day as well. When Debona saw that the shop was busy and heard that he was being called to help, he picked up seven cases of cokes weighing approximately 63 pounds and proceeded to the store. Debona testified as to the manner in which he carried the cokes: "... I picked those Cokes up from the bottom of my hands all up under my chin ..." Debona's hands were stretched down to his knees and he held his back in a hunched over position as he carried the cokes to the coke machine inside the store. Debona testified that he was trying to hurry with the cokes and picked up seven cases, instead of one or two at a time, so that he could take care of the customers.
When Debona lifted the cases of coke from the truck, he testified that his chest started burning. Soon thereafter, Debona broke out *452 in chills. He was able to reach the coke machine where he just dropped the cases of coke on the floor next to the machine. He was called inside the store to wait on customers at that moment but Debona testified that he could not wait on anyone because he felt like he was going to faint. Debona's brother took him to the hospital where he was told that he suffered a heart attack.
At the Alexandria Pawn shop where Debona was employed, a delivery person usually delivered the cokes and loaded them into the coke machine. The delivery person transports the cokes to the machine from the truck by using a dolly. On other occasions, Lyles, the owner of the store, would purchase and transport the cokes. Although Debona testified that he loaded the coke machine at times prior to his June 1992, heart attack, he explained that he never had to carry any cases of coke into the store.
Alexandria Pawn refused to pay workers' compensation benefits on the basis that the claim was not compensable under La.R.S. 23:1021(7)(e). At trial, the parties stipulated that Debona was in the course and scope of his employment with Alexandria Pawn, on June 15, 1992, at the time of his heart attack. It was also stipulated that at the time of his heart attack, Debona's average weekly wage was $291.03, entitling him to a weekly compensation amount of $194.00.

IV.

ANALYSIS OF THE LAW

A. The "Extraordinary and Unusual" Criterion

In Johnson v. Petron, Inc., 617 So.2d 1358 (La.App.3d Cir.), writ denied, 623 So.2d 1338 (1993), this court explained the legislature's 1989 amendment to La.R.S. 23:1021 as follows:
"In 1989 the legislature amended La.R.S. 23:1021 of the Worker's Compensation law, adding Subparagraph (7)(e), ... This amendment ... changes the law in three ways. First, it changes the standard of proof from a preponderance of the evidence to clear and convincing evidence. Second, it changes the standard for comparing the physical work stress or exertion experienced by the worker; the exertion has to be extraordinary and unusual in comparison to that experienced by the average employee in that occupation. Third, it adds a requirement that the physical work stress or exertion, and not some other source of stress or preexisting condition, be the predominant and major cause of the heart related or perivascular injury, illness, or death." (Emphasis added).
Id. at 1359.
In Johnson, supra, the hearing officer's grant of workers' compensation benefits was affirmed because the physical work stress or exertion was extraordinary or unusual when compared to the average employee in Johnson's occupation as a truck driver. The test under the new law is an objective one. Johnson, 617 So.2d at 1361. The only comparison that is relevant in the present case is the work of the average employee in a pawn shop.
A vocational rehabilitation counselor who testified on behalf of Alexandria Pawn, Lenore Maatouk, contacted several pawn shops in the Alexandria area. Her investigation revealed that employees are required to do a certain amount of lifting. She classified Debona's position as a pawn broker and a pawn clerk. These classifications require such an employee to lift from ten to fifty pounds and exclude "heavy" work. Lifting anything over fifty pounds, she concluded, would require the assistance of a co-worker.
It is clear from the testimony that a pawn shop employee has various duties and that those duties depend upon the type of merchandise brought to the store and the physical ability of the employee. Both Quesenberry and Debona testified that they did not usually purchase and deliver cases of cold drink for the pawn shop and that the cokes were usually delivered by a delivery truck and transported to the machine by dolly. Debona has carried one or two cases at a time but carried seven on the day of his heart attack because the store was busy and he had to hurry his work to wait on customers.
*453 The hearing officer found that the testimony of Debona and Quesenberry was sufficient to establish that the exertion preceding Debona's heart attack was extraordinary when compared with the work of the average employee at Alexandria Pawn and went beyond what was usual, regular and customary in comparison to the average employee in that occupation. We agree. The evidence reveals that the seven cases of coke, carried awkwardly by Debona several feet on that hot and humid June afternoon, weighed approximately sixty-three (63) pounds and that the most an average pawn shop employee is required to lift alone is approximately fifty (50) pounds. This assignment of error is without merit.

B. Causation
Alexandria Pawn next argues that Debona did not meet his burden of proving that the physical work stress or exertion, and not his preexisting condition, was the predominant and major cause of his heart attack on June 15, 1992.
It is undisputed that in 1985, Debona suffered a heart attack while employed as a butcher. It is also undisputed that Debona suffered from occlusive atherosclerotic coronary artery disease (hardening of the arteries). In 1985, Dr. P.K. Kaimal performed a cardiac catherization which revealed multiple blockages. Debona was then sent to Mid America Heart Institute in Kansas City to undergo a multiple vessel angioplasty. Dr. Kaimal had been seeing Debona periodically since that time with the last time being June 16, 1993.
Debona testified that up until the time of his June 15, 1992, heart attack he had not experienced any problems after his attack and subsequent surgery in 1985, even though he continued to smoke and was overweight. Dr. Kaimal, Debona's treating physician, testified that since his 1985 heart attack and angioplasty surgery, Debona remained asymptomatic. Alexandria Pawn makes much of the fact that Debona discontinued his medication. However, Debona explained that he stopped taking the medication because his pharmacist refused to refill his prescription. Debona had been taking his medication since it was prescribed to him in 1985. Once he was informed that he needed a new prescription, Debona saw Dr. Kaimal to evaluate his medicinal needs.
The legislative purpose of the change in the law was to exclude from workers' compensation coverage an employee who just happened to have a heart attack while performing his or her normal job duties. Johnson, supra, 617 So.2d at 1362. In this case, there were two doctors who testified about the cause of Debona's latest heart attack. Dr. Kaimal testified that Debona did not just happen to have a heart attack while performing his job. Dr. Kaimal stated that if Debona strenuously exerts himself in extreme heat and humidity, that his risk of heart attack is greatly increased. He further made it clear that the natural progression of Debona's heart disease is but one factor that could cause his heart attack. The doctor did not feel that Debona's heart attack of June 15, 1992, was merely a result of the natural progression of his disease. The precipitating cause of Debona's heart attack on that day was the physical exertion he experienced while carrying seven cases of coke, in an awkward position, several feet, in extreme heat and humidity. It follows that had Debona not been engaged in this physical work stress, he would not have had a heart attack at that time. He was working and was able to work before June 15, 1992, and he was asymtomatic.
Alexandria Pawn presented the testimony of Dr. John H. Phillips who is board certified in internal medicine with a sub-specialty in cardiovascular disease and a Professor of Medicine at Tulane University. Dr. Phillips never examined Debona and was hired for litigation purposes only. He not only reviewed Debona's medical records but he also reviewed a copy of the workers' compensation statute involved in this case as well as this court's recent opinion in Johnson, supra. Not surprisingly, Dr. Phillips testified that Debona's preexisting heart disease was the predominant and major cause of Debona's June 15, 1992, heart attack. Dr. Phillips further testified that the rate of progression of the disease is tied to certain risk factors. The doctor stated that Debona possessed some of the risk factors such as being middle *454 age, male, cigarette smoker, slightly elevated cholesterol and blood sugar as well as a family history of heart disease. The doctor added that the fact that Debona stopped taking his medication also increased his risk of heart attack. Dr. Phillips also opined that the angioplasty Debona underwent in 1985 relieved part of his condition but it did not cure the underlying coronary disease.
Addressing the physical exertion Debona experienced on June 15, 1992, while transporting the cases of coke, Dr. Phillips testified that the fact that he lifted a little more weight than usual may have played a precipitating role in causing his heart attack. On cross examination, Dr. Phillips stated that 99% of heart attack victims have underlying coronary disease. It follows, therefore, that it is rare for a person to have a heart attack without having an underlying disease. Dr. Phillips further stated that virtually every stress induced heart attack occurs because of significant underlying heart disease. It is clear from Dr. Phillips' testimony that he believes physical stress could never be a predominant and major cause of a heart attack in a person who has had heart disease for a number of years and whose lifestyle presents certain risk factors.
In a workers' compensation case, the determination of causation and disability is legal rather than medical. It is the hearing officer who determines causation and disability and not the expert witnesses. Jackson v. D.C. Kile, Inc., 614 So.2d 225 (La.App. 3d Cir.), writ denied, 616 So.2d 702 (1993). The hearing officer gave greater weight to the testimony of Dr. Kaimal, Debona's treating physician, in concluding that Debona's physical work stress and exertion on June 15, 1992, was the predominant and major cause of his heart attack. The general rule is that the diagnosis of the treating physician is entitled to more weight than that of a physician consulted for purposes of workers' compensation litigation only. Benoit v. Maco Mfg., 633 So.2d 1301, 1306 (La.App. 1st Cir. 1994).
Although the two experts agreed that several factors accounted for Debona's heart attack on June 15, 1992, Dr. Kaimal felt that the work exertion was the precipitating cause. A doctor, simply uttering the phrase, "predominant and major", when testifying in a workers' compensation case about the claimant's preexisting heart disease, as Dr. Phillips did in this case, is not a charm that magically eviscerates a heart attack claim. Dr. Kaimal did not use the words "predominant and major" in giving his opinion of what caused Debona to suffer a heart attack on June 15, 1992. However, clearly in the present case, Dr. Kaimal, by consistently testifying that the work exertion was the "precipitating" cause of Debona's heart attack and that Debona's preexisting atherosclerosis was merely a factor in causing his heart attack and, further, that Debona was asymptomatic, meant to attribute the heart attack to the work exertion as opposed to Debona's preexisting condition.
Webster's defines "precipitate" as "to cause to happen before expected." Thus, we find that Dr. Kaimal's use of the word "precipitate", in this case, was meant to be synonymous with predominant and major. Given the definition of precipitate, it is clear that the doctor felt that absent the job exertion Debona experienced on June 15, 1992, despite his preexisting heart condition, Debona would not have suffered a heart attack on the job or elsewhere on June 15, 1992. If this court were to heed the opinion of Dr. Phillips, under the facts of this case, a heart attack on the job by a person with a preexisting heart condition and other risk factors will never be compensable since the underlying heart condition will always be the predominant and major cause of the heart attack and not the physical exertion. The logical conclusion of Dr. Phillips view is that only 1% of the on-the-job heart attacks are compensable since he testified that 99% of the heart attack victims have underlying heart disease.
Moreover, the supreme court recently held, "a heart attack claimant's case does not fail simply because the medical expert cannot definitively state what the primary cause of the heart attack was." Harold v. La Belle Maison, 643 So.2d 752 (La.1994).
The legislature did not intend to eliminate, altogether, heart-related injuries as compensable accidents arising out of and in the course of employment; it only meant to restrict recovery in some cases. Johnson, *455 supra. This case is not one of them. We find that the hearing officer did not commit manifest error nor was she clearly wrong in concluding that Debona's heart attack on the job is compensable under the workers' compensation laws. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989). This assignment of error is without merit.

C. Permanent and Total Disability
Alexandria Pawn argues that Debona failed to prove by clear and convincing evidence that he was rendered permanently and totally disabled as a result of his heart attack. We disagree. Dr. Kaimal testified that he would allow Debona to perform only sedentary work that involved no stress. Debona is a middle-aged man with little education. Furthermore, Debona testified, and his doctor agreed, that he could not walk fast, that he has chest pain upon physical exertion, and that he is unable to perform heavy lifting. Debona does not know how to type or use a computer. The hearing officer concluded that there was no evidence presented that any stress free, sedentary type employment exists. We agree with that conclusion. This assignment of error is without merit.
For the reasons assigned, the judgment of the hearing officer of the Office of Workers' Compensation is affirmed at Alexandria Pawn's cost.
AFFIRMED.
NOTES
[1] Quesenberry, Debona's co-worker, testified that each case contained twenty-four (24) cans.