650 So.2d 425 (1995)
Willie HARGE
v.
MCC SPECIALTY CONTRACTORS, INC. and Lumbermen's Underwriting Alliance.
No. 94-CA-790.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1995.
Rehearing Denied March 19, 1995.
Writ Denied April 20, 1995.
*426 Kenneth M. Plaisance, New Orleans, for plaintiff-appellee Willie Ray Harge.
David J. Bourgeois, Roy E. Sasser, Metairie, for defendants-appellants MCC Specialty Contractors, Inc. and Lumbermen's Underwriting Alliance.
Robert Angelle, Bruce Barielle, Metairie, for intervenor-appellee Mercy Hosp. of New Orleans, Inc.
Before KLIEBERT, C.J., and GRISBAUM and WICKER, JJ.
KLIEBERT, Chief Judge.
In this worker's compensation case, defendant, MCC Specialty Contractors, Inc. (MCC), appeals the finding that the plaintiff Willie Harge's coronary bypass surgery following his collapse at work from heat stroke is compensable under LSA-R.S. 23:1021(7)(e). The plaintiff, a laborer at MCC, collapsed while in the course and scope of a job at Elmwood Fitness Center, on May 15, 1992. He was diagnosed as having suffered from heat stroke, which was resolved after a nine-day hospitalization. During the hospital stay, tests showed Mr. Harge, a 54 year old black male, suffered from occlusive coronary artery disease, necessitating a triple bypass operation.
On June 10, 1992, Lumbermen's Mutual Insurance Company denied Mr. Harge's claim.
The plaintiff filed suit against the defendants, alleging that he was permanently and totally disabled, and that the defendants were liable. Trial was held on November 4, 1993. On February 25, 1994, the hearing officer rendered judgment in favor of plaintiff, and further awarded him penalties and attorney's fees. A second judgment was rendered on March 3, 1994, in favor of Mercy Hospital as intervenor. The defendants, MCC and Lumbermen's, have timely appealed.

The statute
To recover worker's compensation benefits, plaintiff must bear the heightened burden of proof found in LSA-R.S. 23:1021(7)(e), which reads:
(e) Heart-related or perivascular injuries. A heart related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and

*427 (ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
[Emphasis added]
This statute was amended in 1989, changing the burden of proof from preponderance of the evidence to clear and convincing evidence, and further requiring the plaintiff to show both that his physical work stress was unusual and extraordinary compared to other workers in the same position, and that the physical stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the perivascular injury. The purpose of the statute's amendment was to exclude from coverage employees who just happen to suffer perivascular injuries at work. Johnson v. Petron, Inc., 617 So.2d 1358 (La.App. 3rd Cir.1993). Special rules for proof of causation were established in these type cases because heart attacks and strokes (perivascular injuries) are ordinarily the result of natural physiological causes, rather than trauma or particular effort, which is more easily discernable as a work injury. Thus, when the worker contributes some personal risk, the employment must be clearly shown to have increased the risk of injury before the employee can be compensated. Benoit v. Maco Mfg., 93-0396 (La.App. 1st Cir. Mar. 11, 1994), 633 So.2d 1301.
Case law interpreting the statute is clear that the stress must be physical, not mental, in nature. Benoit, supra; Johnson v. Petron, supra; Fullerton v. Monroe Trucking Co., 612 So.2d 1028 (La.App. 2nd Cir.1993).
Mr. Harge worked as a laborer for MCC. He and his foreman both testified that a laborer's duties consisted of digging ditches, breaking up and hauling concrete, hauling material, fine-grading ditches, carrying lumber and pipe, and digging foundation pads. Additionally, Mr. Harge testified that he was often required to perform work he did not consider a laborer's job, such as reviewing blue prints, grinding pipe, and other duties more fitted to a pipefitter, carpenter, or plumber's apprentice. However, it is undisputed that on the day of and the day preceding the incident, Mr. Harge was not engaged in any of these activities. The plaintiff said that on the day of the incident, May 15, 1992, he was doing the work of three laborers in that he was required to dig a ditch by hand that should have been done with a backhoe.
This contention was directly refuted by several of plaintiff's co-workers. Trentis White was a pipefitter to whom Harge had been assigned to help on May 15th. White said that on that morning, Harge was finegrading a ditch and carrying 3" × 3" × 8' and 4" × 4" × 8' boards to the ditch. Finegrading is where the laborer, with a shovel, levels out the sides and bottom of a ditch that has previously been dug. White was also carrying timbers that day, and noted that whereas he carried them two at a time, plaintiff only carried one. White estimated that the timbers weighed between 15-25 lbs. He characterized both the finegrading and timber carrying as light work. White doubted that Mr. Harge had ever been asked to perform pipefitting tasks, as the union would not have allowed this. However, White said he had only been working with plaintiff on this particular job May 14th-15th.
William Carter was Harge's foreman on this job. He testified that the plaintiff arrived at the Elmwood job sometime after lunch on May 14, 1992, having been reassigned from another location. Harge told Carter that he didn't feel good, and Carter agreed that plaintiff "did not look up to par." Carter said that he told plaintiff he could take the rest of the day off and just come in in the morning, but plaintiff declined saying he could make it O.K. Carter gave Harge what he characterized as light work, finegrading a ditch, and also digging a small portion out by hand that was too close to the building to be done by backhoe. Carter said that this portion of the ditch was only approximately 18" × 20", as the rest had been done by the backhoe. He testified that laborers typically do much heavier digging. Mr. Harge left the job site around 3:15 p.m.3:30 p.m. The next morning, at 7:30 a.m., Carter opined that Harge looked refreshed, *428 and the plaintiff did not complain of illness until his actual collapse around 9:00 a.m. Carter had assigned the plaintiff to assisting White carrying and laying boards (3" × 3" × 8') across the ditch, again characterized as light work for a laborer.
Alfred LeCorgne, III, another foreman, corroborated both White's and Carter's testimony regarding the nature of Harge's activities on May 14th-15th and that the work in question was considered light work for laborers.
Plaintiff had a prior medical history of fainting and dizzy spells. A previous EKG showed evidence of a thickening heart, a symptom of coronary artery disease.
The plaintiff testified that the ditch digging should have been done by three laborers. He testified that on the way home from work on May 14th, he had dizziness, blurred vision, chest pain, and vomiting. When he collapsed on May 15th, he again was dizzy and vomiting, with chest pains and blurred vision. He was taken by ambulance to Elmwood Medical Center, where Dr. Long, the treating physician, diagnosed heat stroke. During the course of subsequent tests, it was shown that plaintiff suffered from occlusive coronary artery disease, having three vessels clogged at 100%, 90%, and 50%, respectively. It is important to note that at no time was plaintiff diagnosed with a heart attack. Both the treating physician and Dr. John Phillips, who performed an IME, opined that plaintiff's coronary artery disease was a longstanding pre-existing condition that was made more symptomatic by the heat collapse. Both physicians reviewed plaintiff's previous medical records showing previous incidents of fainting and nausea.
Regarding the first part of the statute we find the record does not support the trial court's finding plaintiff proved by clear and convincing evidence that he was subject to physical stress or exertion that was extraordinary or unusual to other laborers. Plaintiff's testimony that he was often required to perform duties beyond the scope of a laborer was uncorroborated and denied by other employees of MCC. Furthermore, even if we accept his testimony, plaintiff failed to show that these alleged additional duties (such as grinding pipe and reading a blueprint) were physically more stressful to him than his usual duties. His testimony, and the trial judge so found, that these alleged additional duties caused plaintiff mental stress because he felt the weight of the additional responsibilities, and also felt taken advantage of by MCC. It is undisputed that on both, May 14th and 15th, plaintiff was not engaged in any of these alleged additional duties, but was performing light digging and hauling.
LSA-R.S. 23:1021(7)(e) is clear that the stress or exertion must be physical in nature.
In Fullerton v. Monroe Trucking Co., 612 So.2d 1028 (La.App. 2nd Cir.1993), benefits were denied to a truck driver who alleged his heart attack was due in part to the stress of having to drive a rig in snow and ice, to manipulate the fifth wheel, and to climb stairs. The court pointed out that all drivers were subject to these same physical activities, and thus the plaintiff's physical stress was not extraordinary or unusual. Furthermore, this plaintiff's "nervousness at having to drive in snow and ice constituted mental or emotional stress, and not physical stress," the "elemental prequisite" for coverage under this statute. Benoit, supra, at 1308.
In Johnson v. Petron, supra, the plaintiff truck driver did recover benefits under this statute when it was shown that his tanker truck, unlike other drivers' trucks, was equipped with a screw valve to open the tank, which required significantly more physical exertion than the lever device found on the other trucks.
The very recent Supreme Court case of Harold v. LaBelle Maison Apartments, 94-0889 (La. Oct. 17, 1994) 643 So.2d 752, can be distinguished from the instant case. Etta Harold, a 55 year old woman, worked as a maintenance worker for over fifteen years at the defendant apartment complex. She had no previous symptoms of heart disease. On the morning she suffered a heart attack at work, she was feeling quite ill and advised her supervisor, who responded by giving her several work orders. The court found that being required to work while in pain constituted extraordinary and unusual physical stress. In the instant case, Harge was permitted *429 by his foreman to take the afternoon off, but instead stayed and finegraded a ditch. When plaintiff arrived at work the next morning, he did not report feeling ill, until he collapsed. Thus, he was never required to work in pain as was Etta Harold.
In Nubles v. H & J Employment Service, 25,792 (La.App. 2nd Cir. May 4, 1994) 637 So.2d 648, the plaintiff bricklayer collapsed from heat exhaustion, but did not suffer a heart attack. Subsequent tests revealed two significantly occluded coronary arteries. As a result of these findings, plaintiff underwent double bypass surgery. Like our plaintiff, Nubles was not performing any unusual activities on the day of the collapse. Also, like our plaintiff, Nubles argued that the heat exhaustion made his underlying condition, coronary artery disease, symptomatic to the point where his problems became significant. However, the court held that the heat exhaustion itself did not become a compensable event merely because it made an underlying pre-existing condition symptomatic. Nubles failed in proving that he was engaged in any unusual physical exertion. This case is remarkably similar to the case now before us.
Regarding the second prong of the test, Harge's burden of proof necessarily fails because the physical stress does not become an issue on cause unless it was first proven that the physical stress was unusual or extraordinary. Because the record does not support this first prong by clear and convincing evidence, we do not reach the second part of the statute's test.
Because we find that the plaintiff failed to prove his entitlement to compensation for a perivascular injury under LSA-R.S. 23:1021(7)(e), we reverse the hearing officer's judgment entirely, including the award of penalties and attorney's fees. The judgment against intervenor must also be reversed.
REVERSED.