12WATKINS, Judge.
In this workers’ compensation ease, defendants, Dulac Shipyard, Inc. and Louisiana Workers’ Compensation Corporation, appeal the decision of the hearing officer that the plaintiff, Leslyn Laumann, established by clear and convincing evidence that her deceased husband’s employment was extraordinary and unusual physical work stress that was the predominate and major cause of his fatal heart attack on July 12, 1993, during the course and scope of his employment. The hearing officer noted that the only issue disputed by the defendants was the issue of the stress-related factors. Our review of the record convinces us that the plaintiff did not satisfy the burden of proof specified in LSA-R.S. 23:1021(7)(e); the hearing officer not only committed manifest error in his factual findings, but he committed an error of law in misinterpreting the statute. See Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 02/28/94), 633 So.2d 129. Accordingly, we reverse.
To recover workers’ compensation death benefits, a plaintiff must bear the heightened burden of proof found in LSA-R.S. 23:1021(7)(e), which reads:
(e) Heart-related or perivascular injuries. A heart related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
*825 In 1989, the statute was amended to change the burden of proof from “preponderance of the evidence” to “clear and convincing evidence,” and further to require the plaintiff to show both that his physical work stress was unusual and extraordinary compared to that of other workers in the same position, and that the physical stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the perivascular injury. The purpose of the statute’s amendment was to exclude from coverage employees who just happen to suffer perivascular injuries at work. See Johnson v. Petron, Inc., 617 So.2d 1358 (La.App. 3d Cir.), writ denied, 623 So.2d 1338 (La.1993). The burden of proof of causation was heightened because heart attacks and strokes are ordinarily the result of natural physiological causes, instead of the result of trauma or particular effort, ^making the identification of the heart attack or stroke as a work injury more difficult. Thus, when the worker contributes some personal risk, the employment must be clearly shown to have increased the risk of injury before the employee can be compensated. Benoit v. Maco Mfg., 93-0396 (La.App. 1st Cir. 03/11/94), 633 So.2d 1301. To prove a matter by clear and convincing evidence one must demonstrate that the existence of the disputed fact is highly probable, that is, much more probable than its nonexistence. Lannes v. Jefferson Door Co., 94-1 (La.App. 5th Cir. 5/11/94), 638 So.2d 250.
The cases we have mentioned, and additionally Fullerton v. Monroe Trucking Co., 612 So.2d 1028 (La.App. 2d Cir.), writ denied, 616 So.2d 699 (La.1993), make it clear that the stress must be physical, not mental, in nature. The statutory requirement that the stress be extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in the occupation relates to the work actually being performed at the time of the injury or death. Morris v. Reve, Inc., 95-310 (La.App. 5th Cir. 10/18/95), 662 So.2d 525, writ denied, 95-3037 (La. 02/16/96), 667 So.2d 1055.
Keeping these requirements in mind, we examine the facts of the instant case.
Stephen Laumann began work as a “helper” for Dulac Shipyard in January of 1990; his duties included cleaning up around the shop. A few months later he began driving a truck, and he was classified as a “truck driver/propeller salesman.” In October of 1991, he was involved in a truck accident and lost his left eye. Both before and after the truck accident, Mr. Laumann had duties in the shop (warehouse) between his pick-up and delivery runs in the truck. Mr. George Bourg, a co-owner of the shipyard, testified that the owners’ concern about the adequacy of Mr. Laumann’s vision when driving a truck led them to supply him with some non-driving employment. At the time of his fatal heart attack he was operating the truck approximately four times a week.
It is undisputed that Stephen Laumann was working in the warehouse on July 12, 1993, when he suffered a heart attack and died. That morning, at about 7:00 a.m., Jeffery Bourg, a co-owner of the shipyard, was the first person to arrive at the company’s warehouse. Mr. Laumann arrived at about 8:00 a.m.
It is also undisputed that the warehouse where Mr. Laumann was working was not air conditioned, although the building was equipped with a fan. The fan may or may not have |4been on, but Mr. Bourg’s testimony that he opened the doors was unrefuted. The hearing officer found the following “heat-related conditions” existed: “Mr. Lau-mann died on July 12,1993, with the approximate temperature being 88° to 90° with a 100% humidity. Ventilation was poor and there were sandblasting and other dust related factors associated with his employment. Two witnesses testified that Mr. Laumann’s employment area was “hotter inside than it was outside.”
According to Mr. Jeffery Bourg, Mr. Lau-mann engaged in a “scam” or “bickering” with his brother, Gary Bourg, over a gun that the latter wanted to buy from Mr. Lau-mann. After that exchange of words, which the hearing officer classified as “contentious,” Mr. Laumann and Mr. Jeffery Bourg began “joking” about a waitress the latter knew. Mr. Jeffery Bourg then told everyone to get to work and quit “horsing around.”
About 9:00 a.m., Mr. Jeffery Bourg got himself a root beer and took Mr. Laumann a *826 diet Coke. Mr. Laumann was price stamping one-pound containers of cotton with a stamping machine and placing them on shelving in the warehouse at the time Mr. Bourg took him the drink. When Mr. Bourg turned his back and got as far as the door, he heard a noise and turned around to discover that Mr. Laumann had collapsed and was stretched out on the floor.
Appellee insists that she proved that Mr. Laumann “while at work underwent a physical work stress which was extraordinary and unusual.” According to appellee, the work stress factors she proved were:
(1) Operation of a one-ton flat bed truck with a 50% impaired vision.
(2) The hauling, the movement and the placement of propellers weighing approximately 200 to 1,000 pounds.
(3) Working in a virtual “cracker box” with heat conditions in excess of 100°.
(4) Working in a “cracker box” with heat conditions of 100° and suffering a heart attack while in the midst of a heated argument with his employers.
Even if we were of the opinion that plaintiffs claims of proof are supported by the record, which we are not, it is immaterial that Mr. Laumann operated the truck with impaired vision and sometimes hauled and moved heavy equipment. He was neither driving the truck nor hauling equipment at the time of his fatal heart attack. Instead, he was performing the work of a stock person in a warehouse at the time of his fatal heart attack. The stress or exertion specified by the statute must be unusual for an average employee performing the work the claimant performed at the time of his injury or death. See Morris v. Reve, Inc., supra. Thus, it was legal error for the hearing officer to consider whether Mr. Laumann’s employment was extraordinary and unusual for a truck driver/propeller salesman, because that is not the comparison called for by the statute. If the hearing officer found for a fact that Mr. Laumann was performing the work of a truck driver/propeller salesman at the time of his heart attack, the hearing officer was clearly wrong.
. Furthermore, even if we accept the hearing officer’s findings concerning the heat-related conditions, we cannot agree that those conditions amounted to stress factors that placed Mr. Laumann “outside of what is usual for an employee in that occupation,” as the hearing officer concluded. We have several reasons for disagreeing with his interpretation of the facts. First, at the time of his heart attack, Mr. Laumann was doing the work of a warehouseman, not strenuous labor and not even the work of a trucker/propeller salesman. Second, the record reveals that most shipyard warehouses in the area were not air conditioned; thus, other warehouse-men in the same locale were more likely than not working in the same temperature/humidity condition. Third, there was no definitive medical testimony that the environmental conditions were a cause of the heart attack.[3]
Finally, although the hearing officer considered the verbal exchanges between Mr. Laumann and his employers to be contentious, such a situation would, at most, produce mental stress, not physical stress as required by the statute. See Fullerton v. Monroe Trucking Co., supra. In our opinion, the requirement that Mr. Laumann drive the truck with his vision impairment was also a matter of mental rather than physical stress, although it could conceivably require more physical exertion than would be required of an unimpaired driver. Regardless, the decedent’s truck driving duties were immaterial.
*827 In conclusion, we pretermit any discussion of whether the physical work stress factors alleged were the “predominant and major cause” of the fatal heart attack; because our finding 16that the plaintiff failed to carry her burden of proof required by LSA-R.S. 23:1021(7)(e)(i) precludes her recovery of death benefits from the employer.
Accordingly, because the hearing officer’s decision was marred by several legal errors and clearly wrong factual findings, we reverse, and we dismiss the plaintiffs claim with prejudice. We cast appellee for all costs of these proceedings.
REVERSED.

. Compare, Morris v. Reve, Inc., supra, wherein the court held that a cement finisher working at noon on a June day in New Orleans, Louisiana, was engaged in unusually stressful work at that time for that particular occupation because cement finishers normally work during the earlier and cooler part of the day during the summer months. See Harge v. MCC Specialty Contractors, Inc., 94-790 (La.App. 5th Cir. 2/15/95), 650 So.2d 425, writ denied, 95-0611 (La. 4/21/95), 653 So.2d 574, wherein the appellate court held that plaintiff was not subject to physical stress or exertion that was extraordinary or unusual to other manual laborers, despite the fact that he suffered a heat stroke prior to his heart attack. See also, Nubles v. H & J Employment Service, 25,792 (La.App.2d Cir. 5/04/94), 637 So.2d 648, writ denied, 94—1436 (La. 12/9/94), 647 So.2d 1106; wherein a bricklayer failed to prove he was engaged in any unusual physical exertion despite the fact that he suffered a collapse from heat exhaustion that allegedly made an underlying coronary artery disease symptomatic.