MADELINE JASMINE, Judge Pro Tempore.
 

 RFrom a judgment denying workers’ compensation death benefits, plaintiff appeals.
 
 [1]
 
 After thorough consideration of the record and applicable law, we affirm.
 

 
 *189
 
 The record shows that the decedent, Haruo Hirachi, was hired by Shogun Restaurant in Metairie as a kitchen chef on February 10, 2004. He suffered cardiac arrest while at work on April 10, 2004. He was transported to the hospital by ambulance but could not be revived. An autopsy was performed on April 12, 2004, the report of which plaintiff entered into evidence. The autopsy found the cause of death to be atherosclerotic cardiovascular disease with coronary insufficiency. Specifically, the autopsy found that the right coronary artery had a 95% blockage.
 

 After her request for death benefits was denied, the decedent’s wife, Midori Hira-chi, filed suit against the owner of Shogun Restaurant, Masako (Peggy) |sKamata. Following a trial on the merits, with Mrs. Hirachi representing herself with the aid of a Japanese language interpreter, the trial court took the matter under advisement. The trial court ruled against Mrs. Hirachi, finding that she did not prove that her husband sustained a compensable work injury, and denied benefits in a judgment dated October 28, 2008. This appeal followed.
 

 Law & Analysis
 

 In general, dependents of an injured employee are entitled to receive benefits for any injury that arises in the course and scope of employment that results in the death of the employee. See LSA-R.S. 23:1031 and 1231;
 
 Osborn v. Unit Drilling Co.,
 
 04-0014, p. 2 (La.App. 1 Cir. 6/25/04), 886 So.2d 495, 496, writ denied, 04-1779 (La.10/15/04), 883 So.2d 1062. The claimant bears the burden of establishing a causal connection between the employment accident and the resulting death by a preponderance of the evidence.
 
 Id.,
 
 04-0014 at p. 2-3, 886 So.2d at 496.
 

 When the employee’s death is the result of a heart-related or perivascular injury arising out of and in the course of employment, the general requirements do not apply, and the claim is governed by LSA-R.S. 23:1021(8)(e), which provides:
 

 A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
 

 (i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
 

 (ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
 

 LThe statute limits such compensa-ble heart-related deaths and injuries to those arising out of physical work stress in the job environment.
 
 Hatcherson v. Diebold, Inc.,
 
 00-3263 (La.5/15/01), 784 So.2d 1284, 1290-91. The stress must be physical, not mental, in nature.
 
 Harge v. MCC Specialty Contractors, Inc.,
 
 94-790 (La.App. 5 Cir. 2/15/95), 650 So.2d 425, writs denied 95-0611 (La.4/21/95), 653 So.2d 574; 95-0736 (La.4/21/95), 653 So.2d 574.
 

 LSA-R.S. 23:1021(8)(e) also imposes on the claimant the heightened burden of proof by clear and convincing evidence, which is intended to exclude from coverage an employee who just happened to have a heart attack while performing his job.
 
 Hood v. Metro Industrial Corp.,
 
 00-2158, p. 4 (La.App. 1 Cir.12/28/01), 806 So.2d
 
 *190
 
 848, 851, writ denied, 02-0947 (La.9/80/02), 825 So.2d 1185.
 

 It is well settled that an appellate court may not set aside the factual findings of a workers’ compensation judge in the absence of manifest error or unless they are clearly wrong.
 
 Chaisson v. Cajun Bag & Supply Co.,
 
 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380.
 

 Mrs. Hiraehi testified, through the aid of an interpreter, that she was not present when her husband died, because she was living in California. She received a call from Shogun’s owner that her husband had collapsed and died. She reported that her husband had called her during the two months he was employed at Shogun to report that he had “so much stress” at work. Mrs. Hiraehi claimed that her husband was hired as a kitchen chef, but was required to work as a head chef, a kitchen chef, and a dishwasher, which was too much stress. She claimed that he had told her that on at least one occasion, he was only one of two kitchen chefs working the busy lunchtime shift even though there were 50 employees at the restaurant.
 

 |flMrs. Hiraehi told the court that she spoke with several of her husband’s coworkers after he died, while she was trying to investigate his death.
 
 [2]
 
 She said that they told her that her husband worked at least 56 hours per week, and some weeks he worked shifts of at least eleven hours, four days a week.
 

 On cross examination, Mrs. Hiraehi testified that her husband was supposed to quit Shogun on April 10, 2004, the day he died.
 

 Mrs. Hiraehi submitted the following evidence in support of her claim, besides the autopsy report. She introduced the decedent’s medical record from East Jefferson Hospital from the day of his death. Her third exhibit was a copy of a letter she sent to the workers’ compensation judge, which was admitted over defense counsel’s objection. She submitted a bill from a life insurance policy that Mr. Hiraehi purchased in 2002, reasoning that it proved he was healthy if he was allowed to purchase the insurance. She also submitted a lab report of blood work on her husband, dated 1999, also to prove that he was in good health prior to his death.
 
 [3]
 

 The defense called Mr. Albert Courcelle, Shogun’s bookkeeper and payroll manager. He testified that he had been employed in that position since 2001, and that he was very familiar with conditions in the kitchen because he had to pass through the kitchen to get to his office. He testified that Mr. Hiraehi had wanted to quit on April 3, but that he told Mr. Courcelle that his wife wanted him to earn more money, so he agreed to stay until April 10. According to both Mrs. Hiraehi and Mr. Courcelle, Mr. Hiraehi had plane tickets home to California for April 12, 2004.
 

 | ¡¡Mr. Courcelle testified that all the chefs were salaried, and that all worked generally the same hours, which were 5 days per week, 8-10 hours per shift, de
 
 *191
 
 pending on the season.
 
 [4]
 
 He stated that more chefs worked on the weekends, since the restaurant was busier then. (April 10 was a Saturday.) Mr. Courcelle stated that Mr. Hirachi’s duties were the same as all the other chefs’ duties. He explained that all the chefs washed their own pots and utensils prior to their shift, but that they did not wash dishes, as the restaurant employed a dishwasher for that purpose. He also explained that separate people were hired for the “prep” work. Mr. Courcelle was emphatic that Mr. Hirachi was not working three different jobs, as his widow claimed, but only the job of kitchen chef, with the same duties as the other kitchen chefs.
 

 Mr. Courcelle testified that Mr. Hirachi never complained to him about being overwhelmed or overworked. He also testified that February and March were the restaurant’s slowest time, as compared to the summer season (June, July, and August), when the restaurant was traditionally much busier.
 

 Considering the above-cited law and the record, while we have sympathy for the plaintiffs loss, we find no manifest error in the trial court’s conclusion that plaintiff failed to prove that decedent suffered a compensable on-the-job injury. Plaintiffs evidence did not satisfy her “clear and convincing” burden of proof that her husband suffered extraordinary physical stress while on the job. Her only evidence about the physical conditions of her husband’s job was hearsay. Also, her only evidence regarding her husband’s health was several years old (the 1999 lab report), and thus was of little evidentiary value.
 

 Mr. Courcelle, on the other hand, demonstrated personal knowledge of Mr. Hira-chi’s working conditions that Mrs. Hirachi did not counter. He established, | .¡contrary to Mrs. Hirachi’s claims, that Mr. Hirachi’s working conditions were no more physically stressful than other kitchen chefs at the restaurant.
 

 In her appellate brief, plaintiff asks this court to give her her husband’s time card from Shogun. No time cards were entered into evidence, only Mr. Hirachi’s pay stubs, presumably because he was salaried and was not paid by the hour. In any event, this court cannot do what plaintiff asks. This court is unable to review evidence not first admitted in the trial court.
 

 Mrs. Hirachi also asks this court to look again at the autopsy report. She claims in brief that a physician told her that when a man dies “like this,” usually a few blood vessels are blocked, but in her husband’s case, only one vessel was blocked. This court has reviewed the autopsy report, which clearly says that the decedent died from atherosclerotic cardiovascular disease with coronary insufficiency, noting that only one blood vessel was 95% blocked. The autopsy report’s conclusion clearly contradicts the opinion of the unknown and unnamed physician, who did not testify.
 

 The issue before this court is whether the trial court erred in finding that plaintiff failed to carry her burden of proof under LSA-R.S. 23:1021(8)(e), by clear and convincing evidence, that the physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation.
 
 [5]
 
 As stated above, we find
 
 *192
 
 no manifest error in the trial court’s judgment.
 

 AFFIRMED.
 

 [1]
 

 . The suit’s title reflects the name of the decedent, although his widow, Midori Hirachi,
 
 *189
 
 filed the suit in proper person.
 

 [2]
 

 . In her brief, Mrs. Hiraehi claims that Shogun tried to hide her husband’s death, pointing to inaccurate information in his death certificate. However, it appears that she argues that they tried to misrepresent his death, since she admits that the owner of Shogun notified her of her husband’s death on the same day. The trial court made no finding in this regard, and we see no evidence in this record that Shogun tried to misrepresent Mr. Hirachi’s death.
 

 [3]
 

 . The trial court did not comment upon this 1999 lab report, but it is noted that therein that Mr. Hiraehi had "high” cholesterol, which is generally known as a risk factor in cardiovascular disease.
 

 [4]
 

 . Mr. Hirachi’s pay stubs were entered into evidence.
 

 [5]
 

 . The statute has a second prong: a plaintiff must prove that the physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. This prong is only reached if the requirements of the first prong are met, that the physical stress was unusual and extraordinary. Since
 
 *192
 
 die plaintiff did not meet this first burden of proof, we do not reach the second.