633 So.2d 1301 (1994)
Barry BENOIT
v.
MACO MANUFACTURING.
No. 93 CA 0396.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
*1302 Charley Schrader, Jr., James Leeper, Houma, for plaintiff-appellant Barry Benoit.
Lobman, Carnahan & Batt, Kenneth Evans, Metairie, for defendant-appellee Maco Mfg.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Plaintiff, Barry Benoit, appeals a ruling of the Office of Workers' Compensation which denied him compensation benefits, and dismissed his action, after a finding that his heart attack was not a "work-related injury." La.R.S. 23:1021(7)(e). We affirm the ruling.
On appeal four issues are presented for our consideration: 1) The constitutionality of the Title 23 Section 1021(7)(e) of the Worker's Compensation Act. 2) The admissibility and weight to be afforded Dr. Lutz's testimony. 3) The correctness of the examiner's finding that plaintiff's heart attack was not work-related, and 4) the correctness of the ruling that plaintiff was not entitled to penalties and attorney fees.
The facts out of which this incident arose, and which are not in dispute, are as follows:
Plaintiff, Barry Benoit, an employee of Maco Mfg. Co., suffered a heart attack on May 18, 1990. He was taken to Terrebonne General Hospital where he was diagnosed as having suffered an acute myocardial infarction. It was discovered that he suffered from a 99% blockage of the left descending artery and a 30% blockage of another artery. Dr. Richard Abben, a cardiologist, treated the plaintiff. He performed a balloon angioplasty *1303 to reopen the blocked vessels.[1] An electrocardiogram evidenced that the plaintiff had suffered a heart attack which was moderate to severe. The plaintiff also sustained some significant heart damage. Dr. Abben prescribed rest, blood thinning medication and medicines to slow the plaintiff's heart beat and control his blood pressure. The plaintiff was a diabetic who took ½ tablet of diabetes medicine a day. Additionally, he was overweight, suffered from high cholesterol of 655 at the time of this incident; and, for some years before, had been a smoker.
Following his hospitalization, the plaintiff was out of work for approximately 30 days. He returned to work June 15, 1990 and terminated employment August 27, 1990.
The facts surrounding the plaintiff's activities on the date of this incident are in dispute.
The plaintiff testified that, on the date in question, he had made several sales calls in the early morning. He first visited a customer, David Atkins, a broker for repair work in the oil field industry. During their meeting Mr. Atkin advised plaintiff that he would not recommend the defendant company to Kevin Martin for certain repair business, because Atkins felt the defendant was not properly equipped to handle the repair business. However, Mr. Atkins did agree to place the plaintiff in direct contact with Mr. Martin.
Following the meeting with Atkins, and before his anticipated meeting with Martin, the plaintiff met with his associate, Brian Pellegrin. Pellegrin was a friend whom Benoit brought, from another position, to the defendant company, to assist him with sales.
As plaintiff left his meeting with Pellegrin and was about to proceed to see Kevin Martin, he began to suffer the first signs of distress. He testified that he felt pain in his arm and began to drive towards home. He stopped on his way, due to physical difficulties. Upon arriving at home he went to bed. He was suffering chest pains which radiated down his arm. He also suffered shortness of breath, cold sweat and nausea. Thinking it would improve his condition, plaintiff took a shower. He then drank a cup of coffee. He continued to feel poorly and was accompanied, by his wife, to the emergency room of the local hospital.
The plaintiff's testimony concerning his activities, on the morning of this incident, were corroborated by David Atkins and his wife, Sandra Benoit. His associate, Brian Pellegrin acknowledged talking to the plaintiff on the morning in question but he stated the first time he saw plaintiff on that day was at the hospital.
The facts surrounding plaintiff's activities the morning of his heart attack were also disputed by Robin Page, an emergency room nurse at Terrebonne Hospital, and Mario Corzo, president of the defendant company.
Ms. Robin Page testified that when she took a history from Mr. Benoit, at the hospital, he had told her he was resting at home and drinking coffee when the attack occurred.
Mario Corzo testified that, on the morning in question, he arrived at work, as he always did, at 7 a.m., and he never saw the plaintiff. Mr. Corzo further testified that, at approximately 8:30 a.m. that morning, he received a phone call from Mrs. Benoit who advised him that her husband was in the shower and was experiencing chest pains and she was going to take him to the hospital.
The facts surrounding the conditions of plaintiff's employment with defendant are also in dispute.
Barry Benoit testified that he had been engaged in the oil field industry, in various capacities since 1958. In particular, he was involved in the rental of tools from 1958 until 1978. He owned a machine shop business which manufactured drilling equipment from 1978 until 1989. He sold the shop's equipment to cover the mortgage balance in 1989, when the industry experienced a down turn.
Mr. Benoit testified that he had known Mario Corzo for some time because of his *1304 work in the oil field industry. In early 1990, Benoit approached Corzo and suggested that they engage in a joint venture wherein plaintiff would engage in selling and management of a repair service for well heads. According to plaintiff, he was to be paid a salary of $550 per week, a commission of 2% of gross sales and reimbursement for his automobile expense. According to plaintiff, he would report to Mr. Corzo and act as a liaison for the defendant company. Mr. Benoit stated that he conducted a survey for the defendant before he started the job. He also secured the employment of Brian Pellegrin, an experienced worker in the industry, to assist in the operation of this segment of the defendant's business. Mr. Benoit testified that he intended to provide the repair business and Corzo agreed to provide the equipment to complete the repairs.
Mr. Benoit further testified that he became increasingly frustrated and angry with Mr. Corzo because, after confecting the agreement, Corzo appeared to lack commitment. That is, Benoit stated that the equipment needed to complete the repairs was not provided and hence, it stifled his efforts to get the repair work. It also inhibited his attempts to have his company placed on the approved list of repairers for various companies in the industry. These conditions caused Benoit to experience stress and frustration.
Mr. Benoit also stated that he felt responsible for Brian Pellegrin, whom he had persuaded to leave a secure position to come to work with him and this was also a source of stress for Benoit.
Mario Corzo, the president of the defendant company, refuted much of the plaintiff's testimony. According to Corzo, the pair originally met at a local restaurant, to discuss their association. Corzo testified that Benoit told him he could bring business to the company and Benoit had tools to perform the repairs. According to Corzo, Benoit asked to hire Pellegrin because there would be no time to train anyone once the business began to develop. The plaintiff was hired on April 23, 1990. An office, near the repair section, was constructed for him at a cost of $2,000-$4,000. A steam cleaner, costing $2,100, was purchased and a testing unit was bought for $2,500. The plaintiff was paid bi-weekly and reimbursed for expenses. No sales reports were submitted and no revenues were earned throughout plaintiff's tenure. According to Corzo, the plaintiff did not complain, before nor after his heart attack, of job frustration or stress. According to Corzo, plaintiff and Pellegrin were fired for nonproduction.
There likewise is a conflict in the testimony concerning the facts surrounding the plaintiff's claim for worker compensation.
According to the plaintiff, when he brought his claim for compensation to Mario Corzo, the latter threw it on the floor.
Mr. Corzo, however, testified that Mr. Benoit was paid for the time he was away from work due to his illness. This witness also stated that he was not told that the heart attack occurred during work. He said that the office manager handles the acceptance and handling of insurance claims. He further stated that he called his boss, the company chairman, on the date of plaintiff's heart attack to see if he could receive insurance coverage. Mr. Corzo stated that the company pays the first $300 on claims for worker compensation. He also testified that the plaintiff's claim was filed with their insurer and that his office manager was instructed to perform the "follow-up" on this.

CONSTITUTIONALITY
The plaintiff alleges that Louisiana Revised Statute Title 23 Section 1021(7)(e) is unconstitutional in that it is so vague as to be incapable of interpretation, thus constituting a denial of due process.
The statute in question provides, in pertinent part:
La.R.S. 23:1021(7)
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:

*1305 (i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
In particular, plaintiff argues that he must prove that the physical stress he suffered was extraordinary as compared to the "average worker" and yet the term "average worker" is not defined.
The hearing examiner found that "[there] is nothing in the language of the statute to indicate that the statute is so vague as to deprive the claimant of due process of law." We agree.
It is a basic tenet of legislative interpretation that the words of a law are to be given their generally prevailing meaning. La.C.C. Art. 11. Moreover, when a law is clear and unambiguous the law shall be applied as written and no further interpretation may be made. La.C.C. Art. 9.
In this case the term "average worker" takes its literal meaning, namely a worker who is "not out of the ordinary." Webster, New Collegiate Dictionary. (1981). Since this term is clear and unambiguous, no further interpretation is required for its application and enforcement. For these reasons we agree that the law is not so vague as to be a denial of due process.
Additionally, the case of Fullerton v. Monroe Trucking Co., 612 So.2d 1028 (La.App. 2d Cir.) writ denied, 616 So.2d 699 (1993), has shed some light on this subject. In Fullerton, at 1031, the court stated that the test, to determine if the physical stress is extraordinary, is to view the plaintiff's activities as compared to the average worker in his employment and not to just look at the plaintiff's day-to-day activities.
Plaintiff next argues that the statute denies him equal protection of the law in that it creates a subclass of workers, namely those who suffer heart-related or perivascular injuries who must prove their cases by a higher standard of proof (i.e., "clear and convincing evidence").
Equal protection provisions of the state and federal constitution do not mandate equal treatment. U.S. Const.Amend. 14; La. Const. Art. 1, Sec. 3, State v. Bell, 377 So.2d 303 (La.1979). Equal protection guarantees essentially require that state laws affect alike all persons or interests similarly situated, but differences in legislative treatment may validly be accorded persons or interests classified differently, provided there be shown a rational basis for differentiation which is reasonably related to a legitimate governmental purpose. U.S. Const.Amend. 14, See: Succession of Robins, 349 So.2d 276 (La.1977).
It is clear that a difference exists in the burden of proof required of workers suffering heart-related or perivascular injuries (i.e., proof by clear and convincing evidence) versus the proof required of all other workers suffering job-related injuries (i.e., proof by a preponderance of the evidence). From a constitutional standpoint, the question then becomes whether a rational basis exists for this differentiation. We answer that inquiry in the affirmative. The reason for the distinction was discussed in Carruthers v. PPG Industries, Inc., 551 So.2d 1282 at 1285. (La.1989). The court in Carruthers, noted that special rules for proof of causation were established in these type cases because heart attacks and strokes are ordinarily the result of natural physiological causes, rather than trauma or particular effort, which is more easily discernable as a work-related injury. Thus, when the worker contributes some personal element of risk, the employment must be clearly shown to have increased the risk of injury before the employee can be compensated. By this method the redactors have attempted to balance the extremes which would result if employers were required to compensate all employee injuries or only hire completely healthy workers.
For these reasons a rational distinction exists for requiring heart-related or perivascular injuries to be proven by "clear and convincing evidence". This provision of the worker's compensation act does not violate the equal protection clauses of the federal *1306 and state constitutions. Title 23 Section 1021(7)(e) is constitutional.

EVIDENCE
Plaintiff contends that the trial court erred in admitting the deposition of Dr. Brobson Lutz into evidence because he was not an expert in the field of cardiology.
The Louisiana Code of Evidence provides for the admission of "all relevant evidence." La.C.Evid. Art. 402. "Relevant evidence" is defined as follows:
La.C.Evid. Art. 401. Definition of "relevant evidence"
`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Moreover, with regard to expert testimony, the Evidence Code states:
La.C.Evid. Art. 702. Testimony by experts
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In the present case, the hearing examiner instructed counsel to provide all of plaintiff's medical records to Dr. Lutz for review.
Dr. Lutz reviewed those records. Upon questioning, Dr. Lutz was asked about his familiarity with the field of cardiology. He responded that he was trained as an expert in the field of internal medicine and this involved the ability to diagnose heart problems. He would, however, refer such a patient to a cardiologist, in the event surgery or another procedure for the heart was required.
Dr. Lutz testified about plaintiff's condition based upon the plaintiff's medical records and his knowledge as a physician practicing in the area of internal medicine. Clearly this evidence was relevant and admissible. The fact that Dr. Lutz was not a cardiologist, but rather a specialist in the field of internal medicine, affected the weight of the evidence, not the admissibility.
Plaintiff also alleges the examiner erred in giving greater weight to the testimony of Dr. Lutz than that of Dr. Richard Abben, since the former witness was not a specialist in the field of cardiology and was not plaintiff's treating physician.
The general rule is that the diagnosis of the treating physician is entitled to more weight than that of a physician consulted for purposes of worker's compensation litigation only. Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1st Cir.1988). Likewise, the testimony of a specialist is entitled to greater weight, when the subject at issue concerns the particular field of the specialist expertise. Johnson v. La. Dept. of Health & Human Resources, 590 So.2d 854 (La.App. 3rd Cir.1991).
In this case we do not agree with plaintiff's evaluation that the fact trier accorded greater weight to the testimony of Dr. Lutz than Dr. Abben, a cardiologist and plaintiff's treating physician. A review of the record indicates a basic agreement by these two physicians as to the issue of causation.
Dr. Lutz stated that it was his opinion that the plaintiff's heart attack was caused from a host of factors, including high cholesterol, obesity, diabetes, hypertension and the fact that plaintiff was a male and a smoker. Dr. Lutz did not feel plaintiff's condition was the result of employment stress.
Dr. Abben posited that the heart attack resulted from cholesterol deposits and a blood clot. He inferred that these deposits existed because of the presence of "major risk factors", such as smoking, hypertension and diabetes. He also felt there were "modest risk factors" present, as well, including obesity and stress, which contributed to the timing of this incident. Dr. Abben stated that he could not say plaintiff would not have had the heart attack absent the stress factor. He discussed the stress not as physical, but psychological, in nature.
The two experts agreed that several factors accounted for plaintiff's heart attack. Even though Dr. Abben felt stress was a *1307 factor, he did not feel the stress experienced by plaintiff was a major contributing factor to his heart attack. Additionally, the stress to which he referred was not physical. Thus, even if Dr. Abben's testimony was accorded greater weight by the fact trier, it would still not satisfy the burden of proof necessary for a worker to receive compensation for a heart-related injury. La.R.S. 23:1021(7)(e).
This assignment lacks merit.

WORK-RELATED INJURY
In this case the fact finder concluded that plaintiff's heart attack was not work-related. Plaintiff contends that this was error.
If an employee receives "personal injury by accident" "arising out of" and "in the course of" his employment, his employer shall pay compensation benefits. La.R.S. 23:1031.
A myocardial infarction has been found to satisfy the statutory requirements of "personal injury by accident." Carruthers v. PPG Industries, Inc., supra at 1283 and cases cited therein.
The function of the "arising out of" element of this statute is to assure compensation will be awarded only for personal injury causally related to the employment and fairly part of the cost of doing business. La.R.S. 23:1031; 1021(7)(e). Carruthers v. PPG Industries, Inc., supra at 1284. For this reason the legislature enacted Louisiana Revised Statute, Title 23 Section 1021(7)(e) which deals specifically with the proof that must be satisfied for "heart-related" (or perivascular) injuries. In the recent Louisiana Supreme Court case of Charles v. The Travelers Insurance Co., 627 So.2d 1366, 1370 (La.1993), the court discussed the elements of proof:
La.R.S. 1021(7)(e) now requires that for a `heart-related' or `perivascular' injury to be compensable at all under the Act, the plaintiff must:
(1) demonstrate by clear and convincing evidence,
(2) that his physical work stress was extraordinary and unusual in comparison to the stress experienced by the average employee in that occupation, and
(3) that his physical work stress, and not another source of stress or a preexisting condition, was the predominant and major cause of the illness or death. (Emphasis added)
Additionally, the plaintiff must prove the injury occurred "in the course of his employment." La.R.S. 23:1031. It is generally settled that an accident satisfies this criteria if it happens during the time of the employment and at a place contemplated by the employment. Reid v. Gamb, 509 So.2d 995 (La. 1987).
In the present case the fact finder concluded that plaintiff did not sustain a work-related injury. In reaching this conclusion, the following pertinent reasons were given:
* * * * * *
Mr. Benoit had just about all the known major factors for Coronary Artery Disease. Therefore, his myocardial infarction should not have been a surprise to anyone, least of all Mr. Benoit. Mr. Benoit had been evaluated about one year pre-injury and it was found at that time that his cholesterol, triglyceride and glucose levels were too high. Mr. Benoit had high blood pressure, diabetes, a past smoking history, was overweight, and he is a male over the age of thirty-five. The only major factors not present were family history (this is not actually known as it appears that Mr. Benoit did not know his parents' cause of death) and alcohol consumption. The left anterior descending artery was 99% blocked and the right coronary artery was 30% blocked. The 99% blockage was obviously due to Coronary Artery Disease and took years to develop. A blood clot may or may not have contributed to the attack; and if it did, it may or may not have been caused by job-related stress.
The stress factors, mental and physical, are only considered to be contributing factors unless no major factors are found. There are many cases in which a heart attack is caused by the stress factors because the patient has no known major factors or too few to be considered alone. However, this is not the case.

*1308 There is conflicting testimony as to the employment arrangement between Maco and the claimant; but there is no need to make a determination of same. The Court is of the opinion that Mr. Benoit's job, although definitely stressful, was not the cause of his attack.

* * * * * *
These facts are fully supported by the record and we find no error in this regard. Stobart v. State, Department of Transportation and Development, 617 So.2d 880 (La. 1993).
The plaintiff failed to meet his burden of proving by clear and convincing evidence that his heart attack resulted from physical work stress which was extraordinary and unusual compared to that of the average employee and that it was this stress, and not his preexisting condition(s), that were the major cause of his heart attack. Both experts emphasized the existence of numerous pre-existing conditions present in the plaintiff which would make him a prime candidate for this heart attack. One expert clearly discounted employment stress as a causative factor. While the other expert recognized that stress could be a contributing factor, he de-emphasized the role it played in causing the plaintiff's injury. Additionally, he made no allusion to physical stress, which is an elemental pre-requisite in cases such as this.
Additionally, the fact finder did not reach the companion element of proof, namely, whether the accident occurred "in the course" of plaintiff's employment. Since the testimony concerning the time and place of this occurrence was in conflict, it would have supported a finding that this accident did not occur within the course of plaintiff's employment. La.R.S. 23:1031.
However, we also pretermit a further discussion of this issue since we find plaintiff's failure to carry his burden of proof under R.S. 23:1021(7)(e) precludes his recovery of benefits.

ATTORNEY FEES AND PENALTIES
Plaintiff contends that defendant acted in an arbitrary and capricious manner in refusing to pay worker's compensation benefits and medical expenses. He argues that he is entitled to attorney fees and penalties under La.R.S. 23:1201.2.
As previously discussed, the record evidences a serious dispute as to whether plaintiff's heart attack was caused by his employment and arose in the course of employment. Under these circumstances we cannot say that the defendant's actions in refusing compensation benefits and coverage for medical expenses were arbitrary and capricious. Sanchez v. Viccinelli Sheet Metal & Roofing, 473 So.2d 335 (La.App. 1st Cir.1985), writ den. 477 So.2d 1124 (La.1985). We find no error in the refusal to award attorney fees and penalties.
For the reasons assigned the ruling of the worker's compensation hearing officer is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] This procedure was performed twice, in close succession, because according to Dr. Abben, the vessels closed shortly after the first procedure.