Mary Ann WILLIAMS, Petitioner,

v.

STATE of Alaska, DEPARTMENT OF
REVENUE, and Alaska Workers' Com-
pensation Board, Respondents.

No. S–5722.

Supreme Court of Alaska.

May 19, 1995.

William J. Soule, Law Office of William J.
Soule, Anchorage, for petitioner.

Kristin S. Knudsen, Asst. Atty. Gen., An-
chorage, and Charles E. Cole, Atty. Gen.,
Juneau, for respondents.

Before MOORE, C.J., and RABINOWITZ,
MATTHEWS, COMPTON and
EASTAUGH, JJ.

*OPINION*

EASTAUGH, Justice.

I. *INTRODUCTION*

Mary Ann (Andrade) Williams, whose
claim for stress-related mental injuries was
denied by the Alaska Workers' Compensa-
tion Board (Board), argues that AS
23.30.120(c) and AS 23.30.265(17) are uncon-

stitutional. The superior court rejected that argument. We treat Williams' appeal as a petition for review and affirm.[1]

## II.  *FACTS AND PROCEEDINGS*

Williams, who had held other state jobs since 1974, began working for the State of Alaska, Child Support Enforcement Division (CSED) in 1977. She was a clerk for CSED until 1979, when she was promoted to Child Support Enforcement Officer I. She became a supervisor with the title of Child Support Enforcement Officer II in 1980. Her general duties included preparing intrastate paternity orders and Uniform Reciprocal Enforcement Support Act cases, supervising a team of four people, reviewing case files, distributing the work load to typists, taking telephone calls, preparing affidavits, calculating AFDC arrearages, and meeting walk-in clients.

She became the only paternity establishment officer when a paternity unit was added to CSED in 1987. Williams coordinated paternity establishment, set up blood testing throughout the state, arranged travel and accommodations for clients, and dealt with problem clients who were having blood drawn.

In April 1990 Williams was told that her team needed to file paternity complaints in all its cases by October 1, 1990, to comply with the Family Support Act of 1988. There were approximately 2,400 to 2,600 such cases. Williams testified she found it difficult and stressful to file the required complaints as requested and complete her other work. She also testified that the absence of clerical support staff, the inadequacy of the physical work environment, and the perceived lack of management support created stress for Williams.

Beginning in 1974, Williams sought treatment for gastrointestinal problems, chronic stress anxiety, chronic fatigue, depression, and other problems. During the following years, Williams saw a number of doctors and psychologists. She claimed she felt disoriented, unable to concentrate, very warm, not able to get enough air, panicked, and helpless. She had those feelings primarily while working, however, before quitting her employment in July 1990, she also began to feel that way when not working. She testified, "It had gotten to the point that I was having problems making everyday decisions. As far as putting things into priority order, I just felt overwhelmed. I just would become very anxious."

Williams experienced stress in her personal life as well. In late 1986 her son was arrested for transporting cocaine. In the first half of 1987, her brother-in-law and mother died. Her son and daughter-in-law divorced in late 1986 and engaged in a painful child custody battle. Her daughter-in-law was awarded shared custody of Williams' granddaughter, and moved out of state in 1988. Williams also experienced stress in her relationship with her husband.

In late March 1990 Williams committed to leave state service. She testified that she had decided retirement was "probably the only option that I had. Because I knew I was not going to be able . . . to stay in the system that much longer."

In April 1990 Williams requested removal from the general CSED work force (supervising and public contact) and asked to work on a special project part time until her October 1990 intended retirement date. She apparently worked on the special project, but

1. The parties have erroneously characterized this matter as an appeal. The superior court remanded to the Board "for either reconsideration of its decision regarding [Williams'] physical injury or establishment of factual findings pertaining to its decision." There was consequently no final, appealable judgment. See *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629 (Alaska 1979) (holding that the decision of a superior court acting as an intermediate appellate court, which reverses the decision of an administrative agency and remands for further proceedings, is not a final judgment for purposes of appeal).

Exercising our discretion, we treat this matter as a petition for review and consider only the constitutional questions. *See, e.g., Thibodeau*, 595 P.2d at 631; *Leege v. Strand*, 384 P.2d 665, 666–67 (Alaska 1963); *see also* Alaska R.App.P. 402(b)(2) (providing that a petition for review may be granted when the "order or decision involves a controlling question of law on which there is a substantial ground for difference of opinion, and an immediate review of the order may materially advance the termination of the proceeding in the other forum").

maintained her other work responsibilities, primarily attempting to bring all the cases into compliance with the Family Support Act by October 1990.

Williams retired under the state's Retirement Incentive Program (RIP) on July 2, 1990. Three days later, she filed a report of occupational injury or illness with the Board, claiming that numerous stress-related physical and mental injuries arose from her employment.

The State controverted Williams' claim, asserting she had not suffered a compensable injury or illness arising out of and in the course of her employment. Williams applied for adjustment of claim, claiming temporary total disability benefits from July 2, 1990, when she retired, permanent partial disability benefits, medical costs, transportation costs, vocational rehabilitation benefits, interest, attorney's fees and litigation costs. Following hearing, the Board dismissed all of her claims.

Williams appealed to the superior court. Alaska R.App.P. 602. The court rejected Williams' claim that AS 23.30.120(c) and AS 23.30.265(17) were unconstitutional and affirmed the Board's denial of benefits for the mental injury claim. The court remanded Williams' physical injury claim for reconsideration or factual findings by the Board.

Before this court Williams argues that the statutes are unconstitutional, and that it was error to affirm the denial of her stress-related mental injury claim.

### III. *Discussion*

In 1988 the legislature enacted comprehensive changes to the existing Alaska Workers' Compensation Act (Act). In part, those amendments altered the definition of "injury" with respect to mental injuries caused by work-related mental stress. AS 23.30.265(17).[2]

The 1988 amendments also eliminated the presumption of compensability for stress-induced mental injury claims. AS 23.30.120.[3] Williams asks us to declare those amendments unconstitutional. She asserts that AS 23.30.120(c) deprives her of equal protection and substantive due process because it requires the Board to treat workers with mental injuries differently from workers with physical injuries. She also argues that AS 23.30.265(17) is unconstitutionally vague and ambiguous, violating procedural due process.[4]

### A. *Substantive Due Process*

■ Williams argues that when we addressed mental stress claims before the Act was amended in 1988, we rejected for mental

---

**2.** AS 23.30.265(17) defines "injury" to mean:

accidental injury or death arising out of and in the course of employment, and an occupational disease or infection which arises naturally out of the employment or which naturally or unavoidably results from an accidental injury; ... "injury" does not include mental injury caused by mental stress unless it is established that (A) the work stress was extraordinary and unusual in comparison to pressures and tensions experienced by individuals in a comparable work environment, and (B) the work stress was the predominant cause of the mental injury; the amount of work stress shall be measured by actual events; a mental injury is not considered to arise out of and in the course of employment if it results from a disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or similar action, taken in good faith by the employer.
(Emphasis added.)

**3.** AS 23.30.120 provides in pertinent part:

(a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
(1) the claim comes within the provisions of this chapter;
(2) sufficient notice of the claim has been given;
(3) the injury was not proximately caused by the intoxication of the injured employee or proximately caused by the employee being under the influence of drugs unless the drugs were taken as prescribed by the employee's physician;
. . . .
(c) the presumption of compensability established in (a) of this section does not apply to a mental injury resulting from work-related stress.
(Emphasis added.)

**4.** We review constitutional issues *de novo* and apply our independent judgment. *Arco Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992). We adopt "the rule of law most persuasive in light of precedent, reason, and policy." *State v. Anthony*, 810 P.2d 155, 156 (Alaska 1991) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 (Alaska 1979)).

injury cases, a "greater than all employees must experience" stress rule. According to Williams, that rule is the same standard the legislature codified in AS 23.30.265(17). In support, Williams relies on *Fox v. Alascom, Inc.*, 718 P.2d 977 (Alaska 1986) (*Fox I* ), and *Wade v. Anchorage School District*, 741 P.2d 634 (Alaska 1987).

In *Fox I*, the injured employee suffered a mental disability due to non-traumatic gradual work-related stress. The Board required her to show that her stress was greater than the stress which all employees experienced. *Fox I*, 718 P.2d at 980. We stated:

> There is an inherent difficulty, however, in determining whether a mental disorder "arises out of" employment. The problem is simply that "the body of knowledge regarding mental or emotional injuries is not certain enough to make rational determinations as to the true nature, extent and cause of injury."

*Id.* at 980–81 (quoting Sara J. Sersland, *Mental Disability Caused by Mental Stress: Standards of Proof in Workers' Compensation Cases*, 33 Drake L.Rev. 751, 752 (1983–84)). We stated that "[i]t is this inherent difficulty in proving causation that has led courts in many jurisdictions to impose additional definitional limits on the compensability of mental injury caused by mental stress by looking 'objectively' at the type and/or degree of the stress." *Id.* at 981. However, we rejected the "extraordinary and unusual" test as "neither essential nor even germane to the legislative requirement that the injury 'arise out of' the employment."[5] *Fox I*, 718 P.2d at 982.

In *Fox v. Alascom, Inc.*, 783 P.2d 1154 (Alaska 1989) (*Fox II* ), we acknowledged that the "legislature overruled this court's decision on this issue by passing legislation creating substantially greater requirements for obtaining compensation for mental injury caused by mental stress than for other injuries."[6] *Id.* at 1156 n. 2. We did not address the constitutionality of the changes in AS 23.30.265(17) or AS 23.30.120(c). We do so now.

In *Municipality of Anchorage v. Leigh*, 823 P.2d 1241 (Alaska 1992), we described the analytical process for determining whether a workers' compensation statute violates substantive due process.

> Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose. It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people. The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based upon some rational policy.
>
> A court's inquiry into arbitrariness begins with the presumption that the action of the legislature is proper. The party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification.

*Id.* at 1244 (quoting *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974)).

The legislature's intent in enacting the stress-induced mental injury amendments is clear. Section 1 of the 1988 session law amending the Act provides:

---

**5.** In *Wade v. Anchorage School District*, 741 P.2d 634, 638 (Alaska 1987), we stated that in *Fox I*, we specifically examined and rejected the "greater than all employees must experience" test and rejected "any other additional 'objective' threshold requirement." Additionally, in *Wade* we rejected the "unusual stress in the profession test" which compares the stress experienced by the claimant with that experienced by others in the same profession. *Id.*

**6.** The House Judiciary Committee's sectional analysis for the bill which proposed the 1988 amendments expressly states: "This section [later to be codified at AS 23.30.265(17) ] is intended to override the Alaska Supreme Court rulings in *Wade v. Anchorage School District*, 741 P.2d 634 (Alaska 1987), and *Fox v. Alascom*, 718 P.2d 977 (Alaska 1986)." House CS for Senate Bill No. 322 (L & C) Sectional Analysis, April 6, 1988, House Judiciary Committee, at 18.

(a) It is the intent of the legislature that AS 23.30 be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of AS 23.30.[7]

Ch. 79, § 1, SLA 1988. The legislature made a rational policy decision when it enacted the amendments adopting an objective standard to determine whether mental injuries are compensable. While both physical and mental injuries are real phenomena and very important to those who suffer from them, the two maladies are inherently different in ways that justify differential treatment. It is generally easier to verify the existence of a physical injury than a mental injury. Physical injuries are often verifiable either empirically or with diagnostic tests. In contrast, mental injuries are more difficult to verify because the patient's description of his or her condition is often the sole basis for a physician's diagnosis. Consequently, the difficulty in proving the existence of such an injury makes mental injury claims more susceptible to fraud and abuse. In an attempt "to ensure the quick, efficient, fair, and predictable delivery" of medical benefits to injured workers, and to prevent fraud and abuse, thereby reducing costs to employers, the legislature, by enacting the 1988 amendment, removed the presumption of compensability for mental injuries and enacted the "extraordinary and unusual" test.

Williams fails to meet her heavy burden of demonstrating that no reasonable basis exists for those amendments. Thus she fails to demonstrate that the statutes deprive her of substantive due process.

### B. *Equal Protection*

■ Williams claims that these two statutes arbitrarily distinguish between physically injured and mentally injured workers, violating her rights of equal protection under the state and federal constitutions. This claim substantially overlaps her claim that these provisions violate substantive due process. *See Leigh,* 823 P.2d at 1247 n. 15. For the reasons stated in the discussion of Williams' substantive due process claims, we conclude that the definition of "injury" and the withdrawal of the presumption for stress-related mental injuries do not violate equal protection. In addition, a traditional equal protection analysis demonstrates how Williams fails to show an equal protection violation.

Alaska's equal protection clause may be more protective of individual rights than the federal equal protection clause. *Gilmore v. Alaska Workers' Compensation Board,* 882 P.2d 922, 926 (Alaska 1994); *State v. Cosio,* 858 P.2d 621, 629 (Alaska 1993); *State v. Anthony,* 810 P.2d 155, 157 (Alaska 1991) (citing *Sonneman v. Knight,* 790 P.2d 702, 706 (Alaska 1990)). In analyzing equal protection issues under the Alaska Constitution, we have rejected the traditional two-tiered federal approach in favor of a more flexible "sliding scale" test. *State v. Erickson,* 574 P.2d 1, 11–12 (Alaska 1978).

First, it must be determined ... what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review....

Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.... At the low end of the sliding scale, we have held that a substantial relationship be-

---

7. Before passing the 1988 amendments, the Senate unanimously adopted the Labor and Commerce Committee Letter of Intent:

  With an actuarial analysis concluding that this bill will provide a two percent savings in hard costs and an unquantifiable amount of soft dollar savings, it is the intent of the Alaska State Senate that, upon passage of this bill, the Division of Insurance request a new rate filing reflecting a reduction in workers' compensation premiums.

  1988 Senate Journal 2420.

tween means and ends is constitutionally adequate. At the higher end of the scale, the fit between the means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.

*Alaska Pacific Assurance Co. v. Brown,* 687 P.2d 264, 269–70 (Alaska 1984). *See also Sonneman,* 790 P.2d at 704.

Workers' compensation benefits are merely an economic interest,[8] and therefore, are entitled only to minimum protection under this court's equal protection analysis. *Gilmore,* 882 P.2d at 927. Since an employee's interest in workers' compensation benefits is reviewed at the low end of the sliding scale, the state's objectives in enacting AS 23.30.120(c) and AS 23.30.265(17) need only be legitimate. The statutes will "pass constitutional muster if the classifications [they create] bear a fair and substantial relationship to the purposes of the Act." *Gilmore,* 882 P.2d at 927. As we noted above, the Act's purpose is "to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of AS 23.30." Ch. 79, § 1, SLA 1988. This is a legitimate goal.

Williams argues that the distinction the statute draws between physical injuries and stress-related mental injuries is not sufficiently related to the state's goals. To prevail against that claim, the state need only show that the distinction bears a fair and substantial relationship to the Act's objective.[9] *Gilmore,* 882 P.2d at 927. The fair and substantial relationship test does not require a perfect fit between a legislative classification and the government objective it is intended to further. *Anthony,* 810 P.2d at 159.

The distinction between physically injured workers and workers with stress-related mental injuries is substantially related to the state's goal of efficiently and fairly distributing benefits while cutting costs for employers.[10] The amendments eliminate unusually susceptible claimants and attempt to minimize fraud and abuse in claims for stress-related mental injuries, thereby saving employers money. Thus, the distinction between physical and stress-related mental injuries in the presumption of compensability does not violate the state's equal protection guarantees.[11] It is important to point out that the legislature has not barred all claims of mental injury from coverage. Rather, the 1988 amendments eliminate from coverage only claims based on usual and ordinary pressures and tensions in the work place.

8. In *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), the United States Supreme Court held that:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. Absent a suspect or fundamental classification, a statute will not be overruled unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979).

9. In *Isakson v. Rickey,* 550 P.2d 359, 362 (Alaska 1976) (quoting *State v. Wylie,* 516 P.2d 142, 145 (Alaska 1973) (footnote omitted)), we stated:

> Under the rational basis test, in order for a classification to survive judicial scrutiny, the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all

persons similarly circumstanced shall be treated alike."

We have upheld Alaska's workers' compensation scheme against an equal protection challenge under the Alaska Constitution as having a "rational basis—even under the 'less speculative, less deferential, more intensified means-to-ends' application of that test." *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 438 n. 41 (Alaska 1979) (quoting *Wright v. Action Vending Co.,* 544 P.2d 82, 87 (Alaska 1975) (footnote omitted)).

10. A 1988 research study by the California Workers' Compensation Institute indicates that in California, which does not employ the "extraordinary and unusual" test, stress claims accounted for almost seventeen percent of all lost time injuries. Arthur Larson, *The Law of Workmen's Compensation* § 42–25(a), at 7–958 (1993).

11. "Since the federal equal protection clause is, if anything, *less protective of individual rights* than the state equal protection clause," we conclude that the federal equal protection clause has not been violated. *Sonneman,* 790 P.2d at 706.

### C. Procedural Due Process

██ Williams also claims AS 23.30.265(17) deprives her of procedural due process because it is vague.[12] She contends that the words "extraordinary and unusual," used in § 265(17) to describe "work stress" sufficient to make stress-caused mental injury an "injury" compensable under the Act, are essentially synonymous. She argues they provide no meaningful direction or explanation in considering whether a particular "mental injury caused by mental stress" is an "injury" or not. She argues that stress is a subjective response to events and that, therefore, the concepts of "extraordinary and unusual" are nonsensical because they do not form a benchmark for any objective measurement. She similarly asserts the statute's requirement that the employee's work stress be compared with "pressures and tensions experienced by individuals in [a] comparable work environment" is useless in forming an "objective" criterion.

We consider three factors when reviewing criminal statutes to determine whether they are void for vagueness.[13] *State v. Rice,* 626 P.2d 104, 109 (Alaska 1981).

> First, a statute may not be so imprecisely drawn and overbroad that it "chills" the exercise of first amendment rights. The second consideration is that in order to be consistent with notions of fundamental fairness a statute must give adequate notice of the conduct that is prohibited. The final element in an analysis of statutory vagueness is whether the statute's imprecise language encourages arbitrary en-

forcement by allowing prosecuting authority undue discretion to determine the scope of its prohibitions.

*Id.* (quoting *Holton v. State,* 602 P.2d 1228, 1235–36 (Alaska 1979)).

These factors obviously have little or nothing to do with the present case. First Amendment rights are not involved, the statutes in question prohibit no conduct; and the statutes give rise to neither prosecutorial action in a criminal context nor a civil enforcement action where a litigant may be at risk of losing an important right because the litigant's conduct did not meet a certain standard.[14] Assuming that there is a constitutional bar of statutory vagueness in a case such as this, where the statute merely sets a dividing line between instances where compensation is payable and those where it is not, the bar is easily overcome. All that should be required is legislative language which is not so conflicting and confused that it cannot be given meaning in the adjudication process. *See Coghill v. Coghill,* 836 P.2d 921, 929 (Alaska 1992) (holding exceptions such as "good cause" not unconstitutionally vague "so long as judges and hearing commissioners continue to exercise their discretion to achieve equitable results consistent with existing case law") (quoting *Fitzgerald v. Fitzgerald,* 566 A.2d 719 (D.C.App.1989)).

The challenged "extraordinary and unusual . . . pressures and tensions" language readily satisfies this test. The language is no more general than numerous other terms which have survived void for vagueness challenges. *See, e.g., Coghill,* 836 P.2d at 929 ("good

---

12. *See supra,* note 3.

13. "The 'void for vagueness' doctrine developed as an aspect of due process jurisprudence in the context of criminal statutes because it was thought unfair to impose criminal punishment on persons for conduct of which they had no notice." *Phillips v. State Bd. of Regents of State University and Community College System of State of Tennessee,* 863 S.W.2d 45, 46 (Tenn. 1993) (citation omitted). The idea of fairness is the basis of the doctrine, and "its purpose is only to provide 'fair warning' of prohibited conduct. It is not designed to convert into a constitutional dilemma the practical difficulties inherent in drafting statutes." *Id.* In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the United States Supreme Court extended the

doctrine to civil cases. In *Arnett,* the Court affirmed the dismissal of civil service employees based upon a statutory standard which provided "such cause as will promote the efficiency of the service." *Id.* at 158, 94 S.Ct. at 1646. The Court recognized that "there are limitations in the English language with respect to being both specific and manageably brief" and stated that a non-criminal statute is not unconstitutionally vague if the statute is set out in terms such that an ordinary person exercising common sense can sufficiently understand and comply. *Id.*

14. *See, e.g., Storrs v. State Medical Board,* 664 P.2d 547 (Alaska 1983) (loss of medical license); *R.C. v. State, DHSS,* 760 P.2d 501, 505–06 (Alaska 1988) (loss of parental rights).

cause" and "manifest injustice"); *Storrs v. State Medical Board,* 664 P.2d 547, 549–50 (Alaska 1983) ("professional incompetence"); *R.C. v. State, DHSS,* 760 P.2d 501, 506 (Alaska 1988) (reviewing authorities which had upheld against vagueness challenges such standards as "unfit," "improper," "neglected," "basic, essential and necessary needs," and "reasonable parental care").

In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the United States Supreme Court stated that a lower degree of exactitude is required for civil than criminal statutes. The Court said:

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

*Id.* at 498, 102 S.Ct. at 1193 (footnotes omitted).

Another state court considered a due process vagueness challenge to a similar workers' compensation statute regarding physical stress. In *Benoit v. Maco Manufacturing,* 633 So.2d 1301 (La.App.1994), the employee argued that the statute requiring "the physical work stress [to be] extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation" is so vague as to be incapable of interpretation, and thus constituted a denial of due process. *Id.* at 1305. Specifically, the employee complained that "average worker" was not defined, and therefore it was impossible to compare stress to the average worker. *Id.* The Louisiana Court of Appeal stated that "the term 'average work-er' takes its literal meaning, namely a worker who is 'not out of the ordinary.'" *Id.* (quoting Webster, New Collegiate Dictionary (1981)). Thus, the court held that this term was not so vague as to deny due process because it is clear and unambiguous, requiring no further interpretation for its application and enforcement. *Id.* Additionally, the court stated that "the test, to determine if the physical stress is extraordinary, is to view the plaintiff's activities as compared to the average worker in his employment and not to just look at the plaintiff's day-to-day activities." *Id.*

Williams does not contend that the Board has engaged in arbitrary or selective determinations of what constitutes stress-related mental injury, nor does the record contain any such evidence. Moreover, the statutory definition of stress-related injury does not allow the Board undue discretion in determining what constitutes such an injury. While the phrase, "the work stress was extraordinary and unusual," may appear vague at first glance, a closer reading of the statute supplies specific clarifying information. First, whether the employee's work stress was extraordinary and unusual must be viewed in comparison to pressures and tensions experienced by others in a comparable work environment. AS 23.30.265(17). Next, the work stress must be the predominant cause of the mental injury. *Id.* Additionally, the amount of an employee's work stress is measured by actual events. *Id.* Finally, the statute lists specific situations in which a mental injury is not considered to arise out of employment.

While the statute must necessarily address the subject broadly because every employee's condition is different, it provides specific information on how to determine whether a stress related mental injury is in fact compensable under the Act. It thus has meaning in itself and through the process of adjudication this meaning will be enhanced. There will, of course, always be borderline and difficult cases, but these are a constant whenever a general standard is applied. We conclude that AS 23.30.265(17) is not void for

vagueness and that Williams was not deprived of procedural due process.

## IV. CONCLUSION

We hold that AS 23.30.120(c) and AS 23.30.265(17) are constitutional. We AFFIRM the superior court's resolution of the constitutional issues.