712 So.2d 636 (1998)
Brian F. CONNOLLY
v.
SEELEY SERVICE CONSTRUCTION.
No. 97 CA 1620.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*637 J. Paul Demarest, New Orleans, for Plaintiff Appellee.
Patricia J. Delpit, Baton Rouge, for Defendants Appellants Seeley Service Construction and Louisiana Workers' Compensation Corp.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
FOGG, Judge.
Defendant, Seeley Service Construction, appeals a judgment of the Office of Workers' Compensation in favor of claimant, Brian F. Connolly, ordering defendant to authorize and pay for surgical procedures recommended *638 by claimant's treating physician. We affirm.
Claimant filed a disputed claim for workers' compensation benefits as a result of an injury he sustained on or about March 4, 1995, while employed as a carpenter by defendant. While patching a ceiling, claimant slipped off a ladder and fell backward to the floor, injuring his neck, left shoulder and right knee.[1] Claimant was treated the following day at the emergency room of Lakeview Regional Medical Center and was referred to Dr. Roch Hontas, an orthopedic surgeon, for further evaluation.
On March 27, 1995, claimant was seen by Dr. Hontas with complaints of pain in his right knee, neck and lower back. Concerning his right knee, Dr. Hontas stated it was possible "that a meniscal injury [had] been sustained." Dr. Hontas prescribed physical therapy and pain medication and scheduled an MRI study of claimant's right knee.
On May 5, 1995, Dr. Hontas reviewed the results of the MRI study of claimant's right knee, which showed degenerative changes along the medial meniscus. In view of claimant's continued complaints of pain and the positive MRI study, Dr. Hontas felt an arthroscopic evaluation of claimant's right knee was warranted. On June 2, 1995, Dr. Hontas performed an arthrophic partial right knee synovectomy. Following surgery, claimant was referred back to physical therapy.
Claimant continued to be treated by Dr. Hontas until November 2, 1995. However, while still under the care of Dr. Hontas, claimant also began treatment with his choice of physician, Dr. John J. Watermeier, also an orthopedic surgeon. Dr. Watermeier had previously treated claimant for the 1979 injury to his right knee and had performed an arthroscopy of the knee in 1980. He had also treated claimant following the injury to his neck in 1982.
Relative to the instant injury, claimant was first seen by Dr. Watermeier on August 8, 1995, with complaints of pain in his knee, neck, shoulders and lower back. Dr. Watermeier scheduled several diagnostic tests, recommended physical therapy and prescribed pain medication. During his October 9, 1995, visit, claimant complained of increased pain in his right knee and neck. At that time, Dr. Watermeier recommended a repeat arthroscopy of the right knee and noted that claimant might also necessarily have to undergo neck surgery to repair a herniated disc at the C6-7 level which resulted from the fall. However, prior to approving the arthroscopy of the right knee, claimant was seen by orthopedic surgeon Dr. Kurt Kitziger on December 6, 1995, for a second medical opinion. Based on his examination of claimant, Dr. Kitziger felt that claimant was not a candidate for further surgery.
Due to differences in the opinions of Drs. Watermeier and Kitziger, Louisiana Workers Compensation Corporation ("LWCC"), defendant's insurer, requested an independent medical examination. Claimant was then seen by Dr. Frederick Keppel, an orthopedic surgeon, on March 4, 1996. Dr. Keppel recommended that claimant continue conservative therapy of his right knee, but "[i]f the patient does not improve with conservative therapy we may once again be forced to arthroscope his knee."
Based on this opinion, the repeat arthroscope of claimant's right knee was approved by LWCC and was subsequently performed on July 25, 1996, by Dr. Watermeier. Thereafter, on claimant's visit in August of 1996, he had a flare-up of pain in his right knee. Consequently, in October of 1996, Dr. Watermeier recommended a non-invasive, manipulation procedure of claimant's right knee to relieve pain and increase mobility and extension. Near this time, Dr. Watermeier also recommended that claimant undergo an arthroscope of his left shoulder to alleviate continued pain in that area. These procedures were denied by the utilization review department of LWCC pending a second medical opinion evaluation regarding their necessity.
*639 The second medical opinion evaluation was scheduled with Dr. Hontas, who had treated claimant at the inception of this claim. On December 5, 1995, Dr. Hontas examined claimant relative to his right knee. As claimant had undergone arthroscopes of his knee in June of 1995 and July of 1996, it was Dr. Hontas' opinion that further surgery would not benefit him. Dr. Hontas opined that claimant had reached maximum medical improvement relative to his knee. He further stated that claimant may eventually have to undergo total knee arthroplasty (knee replacement), but that claimant was too young to consider such a procedure at that point.
After receiving Dr. Hontas' report, which was contrary to Dr. Watermeier's recommendation, LWCC requested another independent medical examination. Dr. Keppel was again appointed by the Office of Workers' Compensation to conduct a second independent medical examination, which was performed on January 13, 1997. Dr. Keppel's report indicated that he was in agreement with Dr. Hontas that claimant's injury to the right knee did not require any further surgical procedures; that claimant had reached maximum medical improvement relative to the knee; and that claimant may require a total knee arthroplasty in the future. His physical examination also did not indicate impingement nor any evidence of any rotator cuff disease; therefore, he also did not recommend performing any surgical procedures on claimant's left shoulder. Dr. Keppel suggested that claimant be treated conservatively with physical therapy. After reviewing this report, approval of the right knee manipulation and left shoulder arthroscopy procedures were again denied.
Dr. Watermeier's trial deposition was taken on February 4, 1997. At that time, Dr. Watermeier recommended that claimant undergo surgery of the neck to repair the herniated disc, closed manipulation of the right knee to increase extension and mobility, and surgical arthroscopy of the left shoulder to alleviate continued pain. He further recommended that these three surgical procedures be performed simultaneously. According to Dr. Watermeier, these procedures were necessary to properly treat the injuries sustained by claimant in the fall.
Trial in this matter took place on March 10, 1997. At trial, the parties stipulated that claimant was an employee of defendant at the time of the accident; that claimant was injured in the course and scope of his employment; and that LWCC was defendant's workers' compensation insurer at the time of the accident. It was also noted that claimant had been receiving weekly indemnity benefits for temporary total disability since the date of the injury. Thus, the issue at trial concerned whether claimant was entitled to have the neck surgery, right knee manipulation and left shoulder arthroscopy as recommended by Dr. Watermeier. Following the trial, the workers' compensation judge rendered a decision in favor of claimant ordering defendant to authorize and pay for each of the recommended procedures. Defendant appeals.
LSA-R.S. 23:1203(A) provides, in pertinent part:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal public, or private facilities as will provide the injured employee with such necessary services.
In order to establish a claim for medical benefits, a claimant must show that the benefit is occasioned by the work-related accident to a reasonable certainty and by preponderance of the evidence. A claimant must also prove by a preponderance of the evidence that a particular medical expense is necessary. Tanner v. International Maintenance Corp., 602 So.2d 1133 (La.App. 1 Cir. 1992). A workers' compensation judge's determinations of whether a medical expense is necessary and occasioned by a work-related accident are factual questions which are reviewed under the manifest-error/clearly-wrong standard of review. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. Under this standard of review, the appellate court does not determine whether a trier of fact was *640 right or wrong, but whether, after reviewing the record in its entirety, the trier of fact's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993).
In the instant case, the evidence adduced at trial supports the workers' compensation judge's conclusions that the injuries sustained by claimant were work-related and that the surgical procedures recommended by claimant's treating physician were medically necessary. Dr. Watermeier testified that claimant's injuries to his neck, shoulder and knee were occasioned by his work-related fall. He further testified that each of the recommended procedures, the right knee manipulation, the left shoulder arthroscopy and the neck surgery, were necessary to alleviate claimant's severe pain and return him to gainful employment.
Herein, the workers' compensation judge was faced with a common problem in workers' compensation cases, conflicting medical opinions. When the testimony of expert witnesses differs, it is the responsibility of the trier of fact to determine which evidence is most credible. The workers' compensation judge is granted considerable discretion in evaluating expert testimony, and his decision to accept the testimony of one expert over the conflicting testimony of another expert can never be manifestly erroneous. Fontenette v. McDermott, Inc., 95-0190 (La.App. 1 Cir. 10/6/95); 694 So.2d 266. See also Rosell v. ESCO, 549 So.2d 840 (La. 1989).
It is a well-settled general jurisprudential rule that the diagnosis of the treating physician is entitled to more weight than that of a physician consulted solely for the purpose of litigation. Benoit v. Maco Mfg., 93-0396 (La.App. 1 Cir. 3/11/94); 633 So.2d 1301. The workers' compensation judge considered the differences in the experts' opinions in the instant case and found the opinion of Dr. Watermeier to be most credible. His reasons for following the opinions and recommendations of the treating physician were as follows:
Dr. Watermeier's opinions and recommendations, because of his long association with claimant, and his in depth knowledge of claimant and claimant's situation, should be given the prime and highest regard. Dr. Watermeier has a long standing familiarity with the problems of claimant whereas Dr. Hontas and Dr. Keppel do not. Dr. Watermeier's judgment is based upon much more awareness and comprehension than the other two doctors. Dr. Watermeier's recommendations for claimant's treatment should be followed.
Furthermore, we note that Dr. Watermeier was the only expert whose testimony was introduced at trial. The opinions of Dr. Hontas and Dr. Keppel were presented by defendant through medical reports and records, without benefit of testimony.
We have thoroughly reviewed the evidence herein and conclude that the decision of the workers' compensation judge ordering defendant to authorize and pay for each of the surgical procedures recommended by claimant's treating physician is supported by the record as a whole. Therefore, the decision cannot be manifestly erroneous and will not be disturbed by this court on appeal.
For the reasons stated, we affirm the judgment of the Office of Workers' Compensation. Costs of this appeal are assessed against defendant, Seeley Service Construction.
AFFIRMED.
NOTES
[1] Claimant's past medical history indicates that he sustained a previous injury to his right knee in June of 1979 in another work-related accident; a number of arthroscopic procedures were performed between 1979 and 1980 relative to this injury. Additionally, claimant sustained an injury to his neck in August of 1982, when he fell down some stairs.