CARTER, C.J.
12This is a disputed claim for workers’ compensation. For the reasons that follow, we amend and, as amended, affirm.

FACTS AND PROCEDURAL HISTORY

In June 2005, the plaintiff, Terry Stog-ner, fell twenty feet to the ground while operating a forklift in the scope of his employment duties with the defendant Smith & Smith, LLC. As a result of the accident, the plaintiff suffered a fractured skull and traumatic brain injury, as well as fractured ribs, lung contusions, and strain on his cardiovascular system caused by the blunt chest trauma.
Dr. William Johnston was the plaintiffs initial neurosurgeon. A CAT scan of the lumbar spine, taken shortly after the accident, showed no acute traumatic injury. The scan did reveal that the plaintiff had degenerative disc disease and joint arthritic changes at several levels of the lumbar spine.
In October 2005, the plaintiff first reported back pain, and an MRI was ordered. The MRI revealed that the plaintiff had moderate spinal stenosis at L2-3, L3-4, and L4-5. The stenosis was more significant than that detected by the earlier CAT scan. During the next year, two more MRIs were performed. The results indicated that the plaintiffs back condition was continuing to worsen, and in July 2006, Dr. Johnston recommended spinal decompression surgery for all three levels (L2-5) to treat the plaintiffs progressive back pain, progressive radicular pain, and neurologic deficit. However, the plaintiffs cardiopulmonary problems, such as the compromising of his airway following the accident, made surgery too risky.
| ^According to Dr. Johnston, a July 2007 MRI showed that the plaintiffs condition at L2-3 had worsened since the October 2005 MRI. In addition, it was suspected that the plaintiff might be suffering from a disc space infection in that region. Dr. Johnston ordered another MRI of the plaintiffs lumbar spine in March 2008. According to Dr. Johnston, this test indicated the degeneration remained unchanged from the July 2007 MRI, and earlier concerns of disc space infection actually proved to be a reflection of advanced *50 degenerative changes in the disc at L2-3. Dr. Johnston last saw the plaintiff in April 2008.
The plaintiff attempted to schedule an appointment with Dr. Johnston at the end of 2009; however, Dr. Johnston was unavailable, so the plaintiff met with Dr. Alan Weems, also a neurosurgeon. Dr. Weems also concluded that the plaintiff required a lumbar decompressive laminectomy and fusion at the L2-5 levels.
The plaintiff filed the present disputed claim for workers’ compensation benefits, seeking payment of all necessary expenses connected with the recommended surgical procedure. At issue was whether the plaintiffs June 2005 accident was a factor in causing or aggravating his medical condition at L2-3 and L3-4, collectively, or at L4-5.[1] Filed into evidence at the hearing were the depositions of Dr. Johnston and Dr. Weems |4and the plaintiffs medical records from Charity Hospital, East Jefferson General Hospital, and North Oaks Medical Center.
After considering the evidence, the workers’ compensation judge (WCJ) concluded that the plaintiff was entitled to reasonable and necessary medical treatment for his condition at L2-3 and L3-4 only.[2] In written reasons, the WCJ referenced Dr. Weems’s testimony as evidence that the June 2005 accident “was a factor in causing the aggravation of the [plaintiffs] progressive spine condition at L2-3 and L[3]-4.” In contrast, the WCJ found that Dr. Weems’s testimony was insufficient to carry the plaintiffs burden of proof to establish a causal connection between the accident and the plaintiffs medical condition at L4-5.
The defendants, Smith & Smith, LLC and Sentry Insurance Company, appeal, alleging the WCJ was clearly wrong in concluding the plaintiff carried his burden of proving a causal connection between the June 2005 accident and the medical condition of the plaintiffs spine at L2-3 and L3-4.[3]

DISCUSSION

The employee in a workers’ compensation action must prove by a preponderance of the evidence that a work-related event occurred and that an |,^injury was sustained. Authement v. Consolidated Water Works Dist. No. 1, 05-0877 (La. App. 1 Cir. 5/5/06), 935 So.2d 158, 162. When an employee suffers from a preexisting medical condition, he may still prevail if he proves that the accident aggravated, accelerated, or combined with the condition to produce the disability for which compensation is claimed. Brown v. Deal’s Carpet Care, 03-0196 (La.App. 1 Cir. 11/7/03), 867 So.2d 762, 765, writ denied, 03-3363 (La.2/13/04), 867 So.2d 691. Where an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident, disabling symptoms appeared and manifested themselves, and that the medical or circumstantial evidence indi *51 cates a reasonable possibility of a causal connection between the accident and the activation of the disabling condition, the employee’s work condition is presumed to have aggravated, accelerated, or combined with his pre-existing disease or infirmity to produce his disability. Brown, 867 So.2d at 765-66.
Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate, or combine with the pre-exist-ing condition to produce the employee’s disability. Brown, 867 So.2d at 766. To rebut the presumption of causation, the employer must prove the absence of any correlation between the work injury and the employee’s disability by a preponderance of the evidence. Brown, 867 So.2d at 766-67.
| (¡Dr. Johnston stated that he did not believe the plaintiff was exaggerating his symptoms; however in his opinion, the plaintiff suffered no acute traumatic injury of consequence to his back from the 2005 fall, and his back pain was more likely related to the progression of a degenerative back disease and joint arthritic changes.
Although Dr. Weems agreed with Dr. Johnston that the changes in the plaintiffs back were not consistent with a fracture or an acute injury, he believed the rapid progression of the degeneration in the plaintiffs back over the last 4 to 5 years was caused by the twenty-foot fall. Dr. Weems described the plaintiffs injuries from the fall as “catastrophic” and explained that the delay in the plaintiff reporting back pain after his fall might be attributed to his severe head injuries. Dr. Weems explained that the plaintiff initially was comatose and bedridden and may not have been cognizant of the pain.
Referencing the plaintiffs multiple MRIs, Dr. Weems discussed the rapid progression of the degeneration at L2-3 and L3-4. In Dr. Weems’s opinion, the plaintiff suffered an injury “significant to multiple parts of the body[,] and it injured his lumbar spine.” The spinal injury caused the plaintiffs existing spinal disease to progress more rapidly. More specifically, Dr. Weems stated that the damage to the L2-3 was most likely an internal derangement of the disc with the fall; “the L2-3 was damaged very badly.” In his opinion, there was “a lot of proof that the plaintiffs back was injured from the fall.
17Factual findings in a workers’ compensation case are subject to the manifest error standard of review. Montanez v. Bayou Insulation & Garage Doors, 07-1988 (La.App. 1 Cir. 5/2/08), 991 So.2d 497, 498. Am appellate court cannot set aside the factual findings of a WCJ unless there is no reasonable factual basis for the findings or the findings are clearly wrong. Montanez, 991 So.2d at 498. When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review, although the appellate court may feel its own evaluations and inferences are as reasonable. Id.
Herein, the WCJ was faced with conflicting medical opinions. When the testimony of expert witnesses differs, it is the responsibility of the trier of fact to determine which evidence is most credible. Connolly v. Seeley Service Const., 97-1620 (La.App. 1 Cir. 5/15/98), 712 So.2d 636, 640. The WCJ is granted considerable discretion in evaluating expert testimony, and his decision to accept the testimony of one expert over the conflicting testimony of another expert can never be manifestly erroneous. Connolly, 712 So.2d at 640.
*52 The WCJ found Dr. Weems credible and persuasive, and the medical records corroborate his deposition testimony. The WCJ’s conclusion that the plaintiff suffered an aggravation of a pre-existing back condition that warrants medical benefits, including the surgical intervention at L2-3 and L3^1, is not clearly wrong.

\P,CONCLUSION

For the above-stated reasons, we amend the WCJ’s judgment to reflect the plaintiffs medical condition as existing at L2-3 and L3-4, rather than at L2-3 and L2-4. Finding no manifest error in the WCJ’s judgment as amended, we affirm. Costs are assessed to the appellants, Smith & Smith, LLC and Sentry Insurance Company.
AMENDED, AND AS AMENDED, AFFIRMED.

. Although multiple levels of the lumbar spine are involved, for purposes of trial, L2-3 and L3-4 have been treated as one area and L4-5 as a second area.

. The WCJ’s judgment incorrectly refers to the region as "L2-3 and L2-4.”

. In his response brief, the plaintiff asks this court to reverse the WCJ's judgment in part and award the plaintiff medical benefits for his medical condition at L4-5; however, the plaintiff filed neither a motion for appeal nor an answer to the appeal. Louisiana Code of Civil Procedure Annotated article 2133 A provides that an appellee desiring to have the trial court's judgment modified, revised, or reversed is obliged to timely answer the appeal. Because the plaintiff failed to file an answer to this appeal, we are prohibited from reviewing this issue.